*418 OPINION.
Teammell :
The petitioner contends, first, that in determining the deficiencies for both taxable years here involved, the respondent erred in refusing to grant the petitioner’s request for a consolidation of the accounts of the partnership and of the corporation pursuant to the provisions of section 240 (d) and 240 (f) of the Revenue Acts of 1924 and 1926. These statutes are identical in form, and read as follows:
In any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the Commissioner may and at the request of the taxpayer shall, if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses, consolidate the accounts of such related trades or businesses.
*419 The petitioner urges that if the accounts of the two businesses in question were consolidated for the taxable years, the transfer of assets from the partnership to the corporation in 1924 would be eliminated as an intercompany transaction, resulting in no taxable gain to the partnership and no deficiency on that account in petitioner’s tax for that year; and that likewise there would be no deficiency in petitioner’s tax for 1925 if the accounts were consolidated, because, it is argued, in such event the gain determined by the respondent as derived by the partnership from the sale of the corporation’s stock would be eliminated as a nontaxable capital transaction.
Without deciding the correctness of the petitioner’s arguments respecting the results which would flow from a consolidation of accounts, it is sufficient to point out that he has failed in the matter of proof on two essential points to bring his case within the statutes relied upon. The evidence adduced by the petitioner shows only that the corporation furnished office space rent-free to the petitioner, and also supplied heat, light, clerical, legal and other services to the partnership without charge, but no attempt was made to show the reasonable value of such services rendered in the taxable years— whether merely of nominal or material amount — and no proof offered to show the necessity otherwise for consolidation of the accounts “ in order to make an accurate distribution or apportionment ” of the income and expenses of the alleged related businesses.
ISTo reason is assigned or proof offered to show that any portion of the taxable income determined by the respondent should be distributed or apportioned to the corporation, and, since the evidence before us relating to expenses affords no basis for a distribution or apportionment of those items, the respondent’s action in refusing the petitioner’s request for a consolidation of the accounts will not be disturbed. Roessler Hasslacher Chemical Co., 25 B. T. A. 915; Western Hide & Fur Co., 26 B. T. A. 354. This being the only error alleged in respect to the year 1925, the deficiency determined by the respondent for that year is approved.
It is not necessary for us to decide whether, if the accounts were consolidated, it would result in the elimination of taxable gain as distinguished from “ an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses.”
The transaction whereby the assets of the partnership were transferred to the corporation took the form of a sale of assets to the corporation. The minutes of the stockholders’ meeting and the minutes of the directors’ meeting referred to the sale of assets by the partnership and the purchase of assets by the corporation. The *420 stipulation of facts states that the assets referred to in the minutes which were transferred by the partnership to the coi-poration in pursuance of a contract ratified in the minutes were transferred in pursuance of the contract.
The contention of the petitioner is that the form of the transaction should be disregarded and that the substance should be considered in determining the tax liability. The respondent contends that the terms of the written instrument, that is, the contract of sale, should not be disregarded and that the parties should be bound by their written instrument. Considering, for the sake of argument, that oral testimony might be considered to show what the actual transaction was, even to the extent of varying the terms of the written contract, see J. W. Solof, 1 B. T. A. 776, Rubay Co., 9 B. T. A. 133, James J. O'Toole, 12 B. T. A. 769, Stockyards Bank of Cincinnati, 25 B. T. A. 964, the facts in this case, based on oral testimony, do not indicate that the transaction was other than what it purported to be, that is, a sale by the partnership. The actions of the parties, on the other hand, affirmatively indicate that all parties to the transaction considered it a sale.
To the extent of $195,768.16, the purchase price was offset by indebtedness due by the partnership to the corporation and the balance of $127,947.34 was set up on the books of the corporation as an indebtedness to the partnership and was set up on the books of the partnership as an account receivable due from the corporation. After 1924 there were various debits and credits on the books of the corporation and the partnership. At one time, at the end of 1924, the indebtedness due from the corporation to the partnership was $57,162.95. This indebtedness was later increased and decreased in various amounts. On April 30,1926, the corporation was indebted to the partnership in the sum of $172,443.48. On May 1, 1927, the amount of the corporation indebtedness to the partnership at that time being $72,076.36, the petitioner received credit for one-third of that amount and at that time the amounts credited to the partners were donated by them to the surplus of the corporation.
Interest was allowed on the credit balance due by the corporation to the partnership.
From the foregoing facts, it may well be that the corporation actually paid the amount of $127,947.34 which was credited to the partnership by the corporation when the assets were transferred to the corporation at the end of 1924. In any event, the subsequent transactions indicate a recognition by both the corporation and the partnership of indebtedness for the assets acquired by the corporation. The partnership, which was on the accrual basis, treated the indebtedness as a valid account receivable. If the excess value of *421 assets over the indebtedness of the partnership had been an actual contribution to surplus, there would have been no account to be used for subsequent credits and debits and no occasion to charge interest thereon. The question also arises as to why the partnership contributed to the surplus in 1927 the balance due by the corporation if the assets were contributed in 1924.
The petitioner contends, and one witness testified, that it was the intention of the partnership to contribute all of the above mentioned assets to the corporation. The fact is, however, that since consideration was undoubtedly paid in the form of offsetting liabilities, at least to the extent of the liabilities owing by the partnership to the corporation, there was a valid consideration and the transfer amounted to a sale.
As to the excess of the amount stated to be the purchase price of the assets over the amount of the indebtedness of the partnership as being paid-in surplus, the evidence indicates that there was but one transaction in so far as assets to the extent of the amount of $323,715.50 are concerned. These are the only assets over which there is controversy in this case.
Even looking through form to the substance of the transaction, it is difficult to see how the one single transaction could be divided into two factors, that is, one a sale of the assets to the extent of $195,768.16, and another a contribution of assets to the extent of the difference; that is, to the extent of $127,947.34, especially in view of the facts of this case. We think, however, that the testimony is inconsistent with this theory of the case. Aside from the written instruments, consisting of the contract, minutes of the directors’ meetings, and minutes of the stockholders’ meetings, which the stipulation of facts states were carried out, the evidence convinces us that there was a valid consideration for the assets in the form of an account receivable in addition to the satisfaction of the indebtedness due the partnership and that this account receivable was credited with various amounts.
We think, therefore, that there was a sale of assets from the partnership to the corporation giving rise to a taxable gain. The assets which were transferred to the corporation cost $236,310.42. Included in those assets, however, there were the Valencia Apartments which were transferred at a price of $72,584.72, which counsel for the petitioner concedes in his opening statement was at a price of $20,000 in excess of cost and which amount was credited to the partnership on the corporation’s books. This would leave the assets which were transferred at a value of $323,715.50 to be reduced by the amount of the cost of the Valencia Apartments, $52,584.72, and the cost should also be reduced by the amount of $1,050 repre *422 senting assets which were transferred by the partnership and that amount credited to the partnership account.
The respondent has determined that the partnership received the sum of $387,135.22 for the assets transferred to the corporation and that the partnership realized a profit of $150,824.80 and that the petitioner herein received $50,274.93 thereof. The $387,135.22 valuation of assets includes the Valencia Apartments which were transferred as aforesaid in a separate transaction. From the admission of counsel that these apartments were transferred at a price of $20,000 in excess of cost, whether they are in a separate transaction or not is immaterial. Considering the transactions separately, this $20,000 profit is subject to tax and the cost of assets transferred should be reduced to the extent of the cost of these apartments, but if the transfer of the assets from the partnership to the corporation, including the Valencia Apartments earlier in the year, is considered as one transaction, then the cost of assets would be $236,310.42 and the $72,584.72 should be added to the selling price. For the purpose of computing taxable gain for the year 1924 the same result is reached on either theory.
There is some testimony in the record that the value of the assets transferred by the partnership to the corporation was considerably less than the figures at which they were transferred on the books. However, since it appears that the corporation received them at the agreed price representing book value, and from the evidence it appears that from the offsetting book entries, credits and debits, the assets were paid for, or were to be paid for, on the basis of book values, we do not feel inclined to disturb the determination of the Commissioner as to the selling price. The evidence discloses that the only thing which was contributed to the corporation by the partnership was the balance of $72,076.36 in May, 1927, and the partnership received gain before they made their contribution to the corporation. We do not agree with the taxpayer that all of the assets were contributed to the surplus of the corporation.
With respect to the year 1925, the partnership, according to the stipulation) sold stock of the Straus Brothers Company to J. Bich for $1,370 in excess of cost to it. The respondent has included one-third of this said amount in petitioner’s taxable income for 1925. We see no error in so doing. The petitioner contended that this was an intercompany capital transaction. There is no intercompany transaction involved in this proceeding.
Reviewed by the Board.

Judgment will be entered under Rule 50.