## REMCO S. S. CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7930.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1936.

William T. Doyle, of San Francisco, Cal., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, John MacC. Hudson, Louise Foster, and Frank J. Ready, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The petitioners herein seek review of an order determining their income tax liability for the years 1927 and 1928.

Petitioner Caspar Lumber Company, a California corporation, hereinafter called "Caspar," during the years 1926, 1927, and 1928, owned all the outstanding stock of petitioner Remco Steamship Company, also a California corporation, hereinafter called "Remco," and during said years owned slightly less than 95 per cent. of the outstanding common stock of Redwood Manufacturers Company, a Nevada corporation, hereinafter called "Redwood."

Caspar owned a tract of redwood timberland, and operated a sawmill for the purpose of converting the timber into lumber, shingles, and railroad ties. It sold all of these products, except for small quantities, to Redwood, and shipped the same to Redwood by boats belonging to Remco.

The net income or losses of the three corporations, before making any deductions for statutory net losses that might be carried forward from the previous year or years, are shown as follows:

For the years 1926, 1927, and 1928, Caspar, Remco, and Redwood filed consolidated returns of their income, on the ground that the three corporations were affiliated corporations, under section 240 (a), Revenue Act of 1926. Respondent disallowed the returns because Caspar did not own 95 per cent. of the stock of Redwood, as required by section 240 (d), before they could "be deemed to be affiliated."

Petitioner concedes the correctness of such decision, but seeks to obtain a somewhat similar result under subdivision (f), section 240, of the Revenue Act of 1926, which reads as follows:

"(f) In any case of two or more related trades or businesses (whether unincorporated or incorporated    *    *    *) owned or controlled directly or indirectly by the same interests, the Commissioner may and at the request of the taxpayer shall, if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses, consolidate the accounts of such related trades or businesses." (44 Stat. 46.)

Under this provision, when a request is made to consolidate accounts, before the Commissioner is required to consolidate such accounts, three requirements must be met. That is to say, (1) the trades or businesses must be related; (2) such trades or businesses must be "owned or controlled directly or indirectly by the same interests"; (3) the consolidation must be "necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions," etc.

It is not denied that a request for consolidation of the accounts was made, and that the first two requirements have been met. The question here revolves about the third requirement, that is, necessity for consolidation. The respondent, though not in words, seems to argue that a determination as to whether or not this requirement is met is based on whether or not Caspar sold its products to Redwood

| | 1926 | 1927 | 1928 |
| --- | --- | --- | --- |
| Caspar Lumber Company | $101,516.83* | $14,615.46 | $124,897.26 |
| Remco Steamship Company | 13,507.99 | 23,127.03 | 27,578.59 |
| Redwood Manufacturers Co. | 52,163.53 | 56,811.00 | 268,660.95* |

*Denotes net loss.

at an excessive price, or whether such price followed the market.

From the stipulated facts, it appears that Redwood purchased the entire output of the Goodyear Redwood Company in addition to the purchases from Caspar, a company operating in the same locality as Caspar, at prices substantially lower than the prices paid Caspar, which purchases from Goodyear Redwood Company were made pursuant to a five-year contract between the latter and Redwood.

It also appears that Redwood made purchases on the open market from others than Caspar and Goodyear Redwood Company, and that "the prices paid for such lumber were approximately equal to the prices paid to Caspar Lumber Company in some cases being somewhat higher and other cases being somewhat lower. The purchases so made were in smaller quantities than those purchased from Caspar Lumber Company."

The Board said that "the evidence adduced to show the results of the alleged arbitrary prices at which lumber was sold by Caspar to Redwood is not convincing."

We do not consider the necessity required in the statute to be a question of ultimate fact, requiring a finding, but rather as a mixed question of law and fact.

There was testimony as follows:

"Mr. Wood testified that he deliberately fixed the price of lumber to be paid by Redwood to the Caspar at a price higher than what he would consider to be the market price for the sole purpose of inciting the sales organization of the Redwood Manufacturers Company to get their money for the product so as to produce better results in order to boost up their showing, just exactly the same as he did between other departments; that he had no thought whatever that it was going to have any bearing on the tax matters one way or the other."

Thus it fairly may be said that the evidence is conflicting, but we conclude that there is substantial evidence to support the finding to the effect that the Caspar-Redwood prices followed the market.

There is no other evidence to show necessity and therefore we hold that respondent was correct in not consolidating the accounts of the three corporations.

Petitioner contends that the Board erred in holding in substance that petitioner's request should be denied, among other reasons, because it did not constitute a request for a consolidation of all of the accounts of the related companies.

The portion of the Board's decision thus complained of reads as follows:

"The law seems to contemplate a consolidation of all the accounts of closely related enterprises. That, however, is not the claim of these petitioners. They would consolidate only those accounts which reflect sales of lumber by Caspar to Redwood. Even if such procedure is authorized by the law, it is obvious that such a partial consolidation might fall far short of an accurate distribution or apportionment of gains or profits, income, deductions, or capital as between the two concerns. The record discloses that Redwood was heavily indebted to both Caspar and Remco and that as to Remco no interest was paid. There may have been many other inter-company transactions favorable to one or another of the members of the related group. We think the purpose of section 240 (f) of the Revenue Act of 1926 can be effected only by a complete consolidation of all the accounts of the three related concerns. On this issue the respondent is affirmed. Western Hide & Fur Co. v. Commissioner, 26 B.T.A. 354; Crossett Western Co. v. Commissioner, 27 B.T.A. 258; Abe Ackerman v. Commissioner, 27 B.T.A. 413; Broadway Strand Theatre Co. v. Commissioner, 12 B.T.A. 1052."

We agree with petitioner that the record is devoid of evidence to support such finding, but we think it immaterial whether petitioners sought a partial or complete consolidation of accounts because in the absence of a showing of necessity therefor, neither partial nor complete consolidation is authorized and we have held that no sufficient or other showing of such necessity is in the record before us.

The remaining question raised by petitioners' assignment is as to the method by which the Commissioner should compute Caspar's statutory net loss for 1926 which may be carried forward in the computation of the same taxpayer's tax liability for 1927 and 1928.

The matter of consolidated returns and the consolidation of accounts as between related business organizations are privileges, and once availed of by taxpayers they afford the taxpayer the benefits ac-

cruing therefrom and also subject him to such burdens as are incident thereto.

■ A taxpayer in order to avail himself of the right to a deduction resulting from a loss must show that he comes clearly within the terms of a statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

■ During the year 1926, Remco paid Caspar a dividend of $50,550. Just prior to the payment of the dividend, Caspar was indebted to Remco in the sum of $62,599.50. There was also evidence that the Caspar Lumber Company absorbed into its own account whatever cash surplus the Remco Steamship Company had.

Respondent, after disallowing the consolidated returns, computed the tax due, by consolidating the accounts of Caspar and Remco. For the years 1927 and 1928, he refused to permit Caspar to carry forward the 1926 loss, without first reducing that amount by the amount of the dividends received by it from Remco.

By section 213 (a) of the Revenue Act of 1926 (44 Stat. 23), the taxpayer is required to include dividends received, as income. Under section 234 (a) (6) of the act, corporations are permitted to deduct such dividends in computing the net income as defined by section 232 (44 Stat. 41). When a corporation wishes to carry forward into the second year the previous year's loss, as permitted under section 206 (b), 26 U.S.C.A. § 117 note, it must compute its "net loss" by including the amount of dividends received, without claiming the dividend as a deduction, section 206 (a) (4), 26 U.S.C.A. § 117 note. The section permitting a taxpayer to carry over previous loss (section 206 (b) provides that "the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

Art. 635, Treasury Regulations 69, provides:

"Subject to the provisions covering the determination of taxable net income of separate corporations, and subject further to the elimination of intercompany transactions (whether or not resulting in any profit or loss to the separate corporations), the consolidated taxable net income shall be the combined net income of the several corporations consolidated. * * *"

Article 1621 provides:

"The term 'net loss' as used in section 206 applies to a net loss during the taxable year. * * * The amount properly allowed may be neither the loss reflected by the return filed for the purpose of the income tax nor the net loss shown by the taxpayer's profit and loss account, but is to be computed according to the statute. * * *"

This article also provides that in determining "net loss" the amount received as dividends must be excluded as a deduction.

It is first contended that section 206 (a) (4) has no application to a dividend paid by a wholly owned subsidiary to a parent corporation, and Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142, is relied upon. That case is distinguishable on its facts, in that it appears that the dividend paid to the parent corporation was by a book entry, and the parent corporation immediately paid the same amount back as a payment on indebtedness owing by the parent corporation to the subsidiary, by means of a book entry. In the instant case there is no evidence that Caspar made a corresponding book entry. Caspar received the dividend, but there is no evidence that it reduced its indebtedness to Remco. In the opinion in Southern Pacific Co. v. Lowe, 247 U.S. 330, at page 339, 38 S.Ct. 540, 543, 62 L.Ed. 1142, the Supreme Court said that, "The case turns upon its very peculiar facts." Such peculiarity of facts is also noted in Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 420, 53 S.Ct. 198, 77 L. Ed. 399. A case must have the same peculiar facts to come within the principle of Southern Pacific Co. v. Lowe, supra.

■ It is next contended that a dividend paid by a wholly owned subsidiary to a parent corporation is an intercompany transaction, and therefore should be eliminated in the computation of "net loss," under article 635. This article relates to the elimination of intercompany transactions in computing "net income" and not to the computation of "net loss." The dividend could have been in effect eliminated, by its inclusion as both income and a deduction. Article 635, supra, has no application to computation of "net loss," as shown by article 1621, which says that such net loss "may be neither the loss reflected by the return filed for the pur-

pose of the income tax nor the net loss shown by the taxpayer's profit and loss account, but is to be computed according to the statute." See Kaiwiki Sugar Co. v. Burnet, 62 App.D.C. 10, 63 F.(2d) 822.

We cannot acquiesce in petitioner's reasoning to the effect that the deduction of the dividend as herein proposed by the Commissioner is wrongful because it will result in double taxation. It seems to be settled law that double taxation is not per se unlawful, Aluminum Company of America v. U. S. (C.C.A.) 67 F.(2d) 172, 175, petition for certiorari denied 291 U.S. 666, 54 S.Ct. 441, 78 L.Ed. 1057.

Courts must give effect to the plain words of a statute even though the effect is double taxation.

An affiliated group of, businesses or trades is a tax computing unit, not a taxpayer, and a corporation, party to the affiliation, does not lose its corporate identity because of such affiliation, nor does it cease to be a taxpayer by reason thereof.

In an affiliated group of corporations, a net loss may be deducted only by those corporations which sustained the loss, and not by the consolidated group as a whole. Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128.

Affirmed.