## G. U. R. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7398.

Circuit Court of Appeals, Seventh Circuit.

Jan. 17, 1941.

188

Harvey W. Peters, of Milwaukee, Wis., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Bureau of Internal Revenue, John M. Morawski, J. Louis Monarch, and Berryman Green, all of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellant petitioned for review of a proposed deficiency in income tax liability for the year 1934. The deficiency was due to reduction in a capital loss sustained on the sale of 300 shares of American Superpower Company stock. Respondent, under Section 45 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code § 45,[1] made his determination on the basis that the stock had been acquired from a company under common control with petitioner. The Board of Tax Appeals sustained the respondent's ruling, and determined petitioner's income tax for 1934 to be $2,713.59.

The question presented is whether the action of the Commissioner was arbitrary or capricious, in allocating to the taxpayer the amount of $804.76, as a deduction from gross income, rather than $7,159.51 claimed by the taxpayer.

The Board found the facts to be as follows: George Uihlein was the sole stockholder of the taxpayer and of the Oakwood Company, both of which were under his control. In 1934 the taxpayer, through a broker, sold 300 shares of the Superpower Company stock for $263.99. In its return for 1934, taxpayer claimed a loss of $7,159.51 by reason of this sale, being the difference between the alleged cost of the stock and its sale price. This stock was part of 1500 shares of the Superpower Company which had been acquired by the taxpayer in a transaction with the Oakwood Company on December 28, 1931. The 1500 shares had been placed on taxpayer's books at a cost to it of $37,117.50, which was the original cost of this stock to Oakwood. However, the fair market value of 300 shares of that stock on the date of transfer to the taxpayer was $1,068.75.

On this date the taxpayer had a maturing loan of $100,000 at the Marine National Exchange Bank of Milwaukee. Its portfolio of securities on that date had a market value of $91,075 which with its cash of $4,060.05 constituted its only liquid assets, making a total of $95,135.05. Its only other asset at that time was an open account advance to the Oakwood Company of $929,644.40, and its only other liability was an advance from Uihlein, its sole stockholder, of $561,687.08.

In order to present an acceptable bank statement and to obtain liquid assets in excess of its bank loan, the taxpayer purchased securities from Oakwood, including the stock here involved. These securities were figured at Oakwood's cost of $369,654.90, and Oakwood assumed the taxpayer's debt to Uihlein of $561,687.08. The total of these figures exceeded Oakwood's debt to taxpayer of $929,644.40 by $1,697.58, which was paid to Oakwood on the same day by taxpayer's check. This transaction in effect cancelled Oakwood's account owing to taxpayer, rendered all of taxpayer's assets liquid, and protected taxpayer on all of its obligations except that to the bank.

On the same day, after the transaction, taxpayer renewed its note at the bank. Both the renewal note and the maturing note were collateral obligations of the taxpayer alone, but the bank looked to the

[1] " § 45. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."

credit of taxpayer's sole stockholder in making the loans.

The Commissioner used $1,068.75, the fair market value of 300 shares of the Superpower Company on the date of the transfer, as taxpayer's basis, and allocated to it $804.76 of the loss, on the ground that such allocation was necessary in order to properly reflect the taxpayer's income for that year. In this we think there was no error.

■ Congress has placed broad discretion in the Commissioner and the Board and we cannot substitute our judgment for theirs unless that discretion has been abused. Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921. The Revenue Act, of course, provides that cost is the proper basis for determining loss on securities sold. But the question of what is actual cost is to be determined by the Commissioner as a matter of fact, and he is given a wide latitude under Section 45 of the Act in making such determination. The evidence here does not convince us that the Commissioner abused his discretion. We think he is supported in principle by Asiatic Petroleum Co. v. Commissioner, 2 Cir., 79 F.2d 234. We approve the Board's decision, and it is affirmed.