GWINN BROS. & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5828.    Promulgated June 28, 1946.[1]

*Leonard R. Tanner, Jr., Esq.,* and *William Ristig, Esq.,* for the petitioner.

*Elmer L. Corbin, Esq.,* for the respondent.

### OPINION.

DISNEY, *Judge*: The controversy here involves income and declared value excess profits taxes for the calendar year 1935. Deficiences were determined as follows: in income tax, $853.57; in declared value excess profits tax, $310.39. The petitioner claims overpayment of $6,974.07. The only issue presented is whether petitioner is entitled in the taxable year to a deduction of $44,475.35 as a bad debt, or as a loss. A stipulation of facts was filed. We adopt same by reference, finding the facts therein set forth. Omitting formal parts, it reads as follows:

1. On or about the middle of the year 1935, the petitioner discovered that $64,730.79 of its funds due from customers had been embezzled by one of its employees.

2. When the embezzlement was discovered, the employee involved, to wit: W. R. Sweney, readily admitted that he had misappropriated collections on accounts receivable in the amount of $64,730.79 for the period of time covering the year 1935 and an unknown number of prior years.

---

[1] Originally entered as a memorandum opinion on June 25, 1946.

3. Petitioner entered upon its books in an account receivable the amount of $64,730.79 covering the aforesaid defalcation.

4. During 1935 W. R. Sweney caused to be transferred to the petitioner for credit to his account in part payment of his obligation to the petitioner, the following amounts and property:

| | | |
|---|---|---|
| Transfer or assignment of notes payable to Mrs. Sweney representing funds borrowed by petitioner from W. R. Sweney's wife | | $1,250.00 |
| Cash value of life insurance policy | | 2,649.00 |
| Real property (fair market value) | $6,000.00 | |
| Less liens | 1,666.36 | |
| | | 4,333.64 |
| Total | | 8,232.64 |

5. Of the total amount of misappropriated funds, $2,420.68, representing the amount of said misappropriated funds applicable to the year 1935, has been allowed as a deduction in the Deficiency Notice.

6. The balance of the account, less payments on account and credits due from the said employee, W. R. Sweney, in the total amount of $54,077.47 was determined to be worthless and charged off the books and records of the petitioner on December 31, 1935.

7. The Commissioner of Internal Revenue has allowed as deductions the following amounts for the following years:

| | |
|---|---|
| 1935 | $2,420.68 |
| 1934 | 3,726.34 |
| 1933 | 3,576.90 |
| 1932 | 2,298.88 |
| Total | 12,022.80 |

This leaves a balance for which no deduction has been allowed for any taxable year in the total amount of $44,475.35 which was misappropriated prior to 1932.

8. An exact copy of the Journal entries relative to the aforesaid account receivable appearing on the books and records of the petitioner is attached hereto, marked Exhibit "1", and made a part hereof. [See Exhibit 1, set forth hereinafter.]

9. On or about March 15, 1936, the petitioner filed with the Commissioner of Internal Revenue at Parkersburg, West Virginia, a return of income on a proper form disclosing an income tax liability in the amount of $7,305.07, and a declared value excess profits tax liability in the amount of $1,712.28 for the taxable year ended December 31, 1935.

10. The aforesaid tax was duly assessed and the amount thereof was paid in quarterly installments during the year 1936, with final payment thereof being made on or about December 15, 1936.

11. On or about February 14, 1939, a timely claim for refund, properly raising the issue involving the deduction of the amount of $54,077.47 in determining income for the taxable year 1935, was filed.

322

COPY

Gwinn Bros. and Company

JOURNAL ENTRIES RE SWENEY DEFALCATION

Year 1935

9/23/35—
NOTES PAYABLE_____ $1,250.00
    W. R. SWENEY_____ $1,250.00
(J 819)  11/30/35—
  W. R. SWENEY_____ 64,730.79
    ACCTS REC. CONTROL A/C_____ 64,730.79
  DIFF. AT 9/30/35
(J 819)  11/30/35—
  LIFE INSURANCE—W. R. SWENEY_____ 2,649.00
    W. R. SWENEY_____ 2,649.00
  Cash Value of Following Policies As-
    signed to Company:

| | | |
|---|---|---|
| Mut. Ben. L. I. Co. #880605 | $725.00 | |
| Acacia Mut. L. Assn. S–799 | 87.00 | |
| Do 147810 | 460.00 | |
| John Hancock 346084 | 487.00 | |
| Do 1916231 | 890.00 | |
| | 2,649.00 | |

(J 820)  11/30/35—
  W. R. SWENEY_____ 1,666.36
    NOTES PAY.—Prudential Ins. Co_____ 1,534.50
    ACCRD. TAXES—City & Co_____ 131.86
  Debts on Property Assumed

| | | |
|---|---|---|
| Taxes Hildacrest | $71.76 | |
| " Wash. Ave | 60.10 | |
| | $131.86 | |

(J 822)  12/31/35—
  PROPERTY—1622 Crestmont Drive_____ 4,000.00
    " 23 Washington Ave_____ 2,000.00
  W. R. SWENEY_____ 6,000.00
  Property Taken on Debt at "Fair Market Value"
(J 822)  12/31/35—
  PROFIT & LOSS, 1935, Loss_____ 2,420.68
  UNDIV. PROFITS PRIOR 1935 Loss_____ 54,077.47
    W. R. SWENEY_____ 56,498.15
  To Chg. Off Accts. Rec. A/C W. R. S.

[The above is an exact statement of the Journal entries on the books of the taxpayer relating to the Sweney account.]

From other evidence adduced, we also find as follows:

The petitioner is a corporation doing business at Huntington, West Virginia, and filed its Federal income and excess profits tax return for the calendar year 1935 with the collector at Parkersburg, West Virginia. W. R. Sweney was bookkeeper for the petitioner, at a salary of about $225–$250 a month. He had been employed by it about twenty years. He received, receipted for, and retained payments made by others to the company. About a week after discovery of the embezzlement, and about the third week in August 1935, a conversation took place between Sweney, James A. Gwinn, secretary of the company, and his father, D. B. Gwinn, president of the company, at the

home of the latter. Sweney was very regretful and agreed to repay in full the misappropriated money. James A. Gwinn thought that Sweney was sincere, and expected that possibly he would repay the full amount. The debt to his account on the corporate books was set up about November 30, 1935, in reliance upon his promise to pay. It was not set up earlier because Sweney was, in connection with an accountant, employed, teaching the secretary to keep books, and because an investigation was being made to learn whether there were other losses. Sweney did not work after August. No note was taken, for it was felt that Sweney's verbal promise would be as good as a written promise or note. The secretary did not think Sweney had thrown the embezzled money away. About the latter part of November the Gwinns began to doubt whether the company would get the full amount. An investigation was conducted during late November and throughout December. The bank account of Sweney and those of his immediate relatives were checked, and all the banks in the radius of Huntington, West Virginia, for the possibility of Sweney's having safe deposit boxes. Stockbrokers were checked for purchases or sales of stocks. Records at the court house were examined for real or personal property listed. No assets additional to those surrendered by Sweney were found. No substantial assets had ever been owned by Sweney, so far as could be discovered, though a check was made back for five or six years. All the assets discovered were turned over to the petitioner. The secretary of the corporation concluded that Sweney's obligation was worthless, and at the end of the year, on December 31, 1935, it was charged off. Throughout 1935 the secretary had full and complete access to the company's books.

In conversation with Sweney in August, the discussion was not so much as to what Sweney had left, but what he had done with the money. He indicated he did not know how much he had left or how much property he had. He did not then disclose what he had or in what form, and was not asked what he had, in cash or property, or with what he could repay. No list was then taken of what he had.

The question here presented is not novel. Numerous cases have dealt with the problem of the time for deductions because of embezzlement. We think it would be pointless to examine in detail such line of cases, in view of the facts shown here. The respondent relies upon what the petitioner inferentially, at least, admits is the general rule, that losses from embezzlement must be deducted in the year suffered; while the petitioner contends that under the facts in this case the Court should do as the Circuit Court of Appeals for the First Circuit did in *Boston Consolidated Gas Co.* v. *Commissioner*, 128 Fed. (2d) 473, and not apply the above general rule (there recognized) because of the unusual circumstances; also, that since *Commissioner* v. *Wilcox*, 327 U. S. 404, the law has been settled that embezzlement creates a debt, which

was herein ascertained to be worthless and charged off in the taxable year; and further, that regardless as to whether embezzlement of itself creates relationship of debtor and creditor, the embezzler here promised to pay the defalcations in full, thereby creating debt, which was later ascertained to be worthless and charged off, in the taxable year.

Upon all the facts, we think petitioner's view should be sustained. The stipulation sets forth, *inter alia*, that Sweney, upon discovery of the embezzlement, admitted the misappropriation "for the period of time covering the year 1935 *and an unknown number of prior years"*; also that, after application of deductions allowed, there *is* left a balance of "$44,475.35 which was misappropriated *prior to 1932."* (Above emphasis supplied.) It appears to be agreed, therefore, that the years of misappropriation of the $44,475.35 (here involved) are unknown. This is indicated also to some slight extent by the fact that the Commissioner stopped at 1932 in allowing deductions. On brief, the respondent says:

There is no dispute with regard to the facts in this case. The embezzlement involved occurred over an unknown number of years prior to 1932 and extended through 1933, 1934, and 1935, at which time the defalcations were discovered. The losses determined to have been sustained in 1935, 1934, 1933, and 1932, have been allowed as deductions from gross income by the Commissioner of Internal Revenue in the adjustment of petitioner's tax liability for those years. It now seeks to deduct the balance representing the amount embezzled prior to 1932 from its gross income for 1935. Petitioner contends that the amount is allowable either as a bad debt or a loss sustained in 1935.

Such, however, is just the situation considered by the court in the *Boston Consolidated Gas Co.* case, *supra*, for there the court points out that in *First National Bank of Sharon, Pa.* v. *Heiner*, 66 Fed. (2d) 925, the court had held that a loss by embezzlement was deductible in the year of embezzlement, not year of discovery, nevertheless that in *Glenn* v. *Louisville Trust Co.*, 124 Fed. (2d) 418, the court held that loss by embezzlement suffered in 1930, discovered in 1931, and adjusted and settled in 1933, could, "viewing the problem realistically," be deducted in 1933; and the court (in the *Boston Consolidated Gas* case) goes on to conclude that the statute should "with a view of avoiding, so far as possible, unjust and oppressive consequences," be not inelastically or rigidly applied, that the word "ordinarily" in Regulations 86, article 43-2, so indicated, and that since the petitioner could not file amended returns for former years because of inability to determine the actual dates of the different acts of embezzlement, "the situation is so extraordinary that its total net loss may be deducted in the year when the loss is discovered and its extent determined." Concurring, Magruder, Circuit Judge, after referring to *McKnight* v. *Commissioner*, 127 Fed. (2d) 572, as decid-

ing that an embezzler of money, unable to restore it, does not make a taxable gain, says:

\* \* \* If at the time of the embezzlement the wrongdoer makes no gain, because of the offsetting obligation, it seems logical to hold that the person whose money is taken does not at that time sustain a loss. Cf. *Douglas County Light & Water Co.* v. *Commissioner*, 9 Cir. 1930, 43 F. 2d 904. Logic here coincides with practical convenience, because, as pointed out by Judge Woodbury, if the Government's view is accepted, the wronged party will often be deprived unjustly of a tax deduction through inability to prove the specific amounts embezzled in any particular year. The same injustice would also result if the taxpayer did not discover an embezzlement until too late to file an amended return and to claim a refund for the year in which the money was taken.

The applicability of the above language to the instant case is apparent, for the petitioner, under the above facts, could not in any particular year prove loss of any particular amount. We think, therefore, that this case falls outside the "ordinary rule" as announced in various cases (prior to the *Wilcox* case, *supra*), and that the cases relied upon by the respondent should not here control. In addition, under the *Wilcox* case, *supra* (though the question there was as to income, the question of debtor-relation was pertinently considered), it seems clear that the embezzlement made the embezzler debtor to petitioner—and it is stipulated that there was discovery, determination and worthlessness, and charge-off in 1935. Our conclusion renders it unnecessary to consider also petitioner's contention that the embezzler by his oral promise to pay in full, created a debtor-creditor status in September 1935.

*Decision will be entered for the petitioner.*