LEEDY-GLOVER REALTY AND INSURANCE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. B. LEEDY & COMPANY, INC. (DELAWARE), TRANSFEREE OF W. B. LEEDY & COMPANY, INC. (ALABAMA), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15890, 15891, 15892. Promulgated July 18, 1949.

*Benjamin Leader, Esq., Alfred Swedlaw, Esq.,* and *Eugene Gilmer, Esq.,* for the petitioners.

*Homer F. Benson, Esq.,* for the respondent.

**OPINION.**

LeMire, *Judge*: (1) *Accrual of commissions.*—Respondent's position on this issue is that the petitioner, making its returns on an accrual basis, should have accrued as income in each of the taxable years the entire amount of the commissions on insurance which it wrote for Houston in that year under the Government contract. The petitioner contends that it correctly reported only the commissions which, under its agreement with Houston, were payable to it within the taxable year, excluding the commissions held under the escrow agreement.

Under the Government contract, Houston was to receive the standard premiums for the state or territory in which the property was located on each policy issued, not to exceed 40 cents for each $100 of insurance. The premiums were due and payable when the policies

were issued. Under its contract with Houston, the petitioner was entitled to commissions of 17⅓ per cent of the entire premiums on each policy issued. However, under further provisions of the Houston contract and the escrow agreement, petitioner was not entitled to receive its full commissions when the policies were issued if the policy was for more than one year, but was entitled to receive in the first year the proportional part of the commissions allocable to that year. The balance of the commissions was placed in the escrow bank, subject to withdrawal only as authorized by joint statement submitted by Houston and petitioner showing their respective interests in the fund. The commissions to which the petitioner became so entitled were credited to it monthly over the terms of the policies. Any portions of the premiums returnable on canceled policies were charged against the petitioner and credited to Houston.

The petitioner's right to commissions must be determined under its contract with Houston rather than under Houston's contract with the Government. The fact that under the Government contract Houston's entire share of the premiums was due and payable when the policies were issued does not affect petitioner's right as agent for Houston. The petitioner and Houston were free to arrange their contract as they saw fit.

Actually, the Houston contract required the petitioner to maintain a Washington office at considerable expense and to service the policies which it wrote over their full terms. The purpose of the escrow provision was to protect Houston against possible loss of the return commissions on canceled policies and to place the cost and responsibility of serving the policies on the petitioner. The evidence is that "thousands" of the policies were canceled. The agreement for placing the commissions in escrow was not, as the respondent in his brief suggests, a voluntary arrangement on petitioner's part for postponing its receipt of the commissions and deferring its tax liability thereon until a subsequent year. This provision was put into the contract at the insistence of Houston and for its protection.

Ordinarily, income is accruable when the right to receive it becomes fixed. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, the Supreme Court held that impounded funds were income to the taxpayer "when it first became entitled to them and when it actually received them," whether it made its returns on a cash basis or on an accrual basis.

Advance payments held by a landlord as security for the performance of the conditions of the lease have been held not taxable income until the happening of some event which gives the landlord the present, unrestricted right of ownership of the funds. See *Clinton Hotel*

*Realty Corporation* v. *Commissioner*, 128 Fed. (2d) 968, and *Warren Service Corporation* v. *Commissioner*, 110 Fed. (2d) 723.

The respondent argues in his brief that under the several contracts the petitioner's commissions were all "earned, due, owing, and payable in the year when the policies were written." The facts are, however, that the commissions were not fully earned, because of petitioner's obligation to service the policies over their full terms, and they were not wholly due, owing, or payable to petitioner until it had performed those services. Moreover, it is not the time of earning income that determines the time of its accrual. For instance, compensation for personal services paid in advance of the services is taxable in the year of its receipt. *Your Health Club, Inc.*, 4 T. C. 385. So are advance rentals if paid without restriction as to the landlord's use and ownership of them. *United States* v. *Boston & Providence R. Corporation*, 37 Fed. (2d) 670; *Renwick* v. *United States*, 87 Fed. (2d) 123; *Commissioner* v. *Lyon*, 97 Fed. (2d) 70.

The petitioner cites *Brown* v. *Helvering*, 291 U. S. 193. The Supreme Court held in that case that the overriding commissions received by a general agency for fire insurance companies on policies written by its local agents were taxable in their entirety in the year of their receipt, without any reduction on account of contingent liability for return premiums on canceled policies. The Court said:

The overriding commissions were gross income of the year in which they were receivable. As to each such commission there arose the obligation—a contingent liability—to return a proportionate part in case of cancellation. But the mere fact that some portion of it might have to be refunded in some future year in the event of cancellation or reinsurance did not affect its quality as income. Compare *American National Co.* v. *United States*, 274 U. S. 99. When received, the general agent's right to it was absolute. It was under no restriction, contractual or otherwise, as to its disposition, use, or enjoyment. Compare *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, 424. * * *.

In further ruling that the overriding commissions could not be allocated to future years extending over the life of the policies, the Court pointed out (1) that the Board of Tax Appeals had concluded that there was no proof that the overriding commissions contained any element of compensation for services to be rendered in future years; (2) that the full amount of the overriding commissions had at all times been treated by the taxpayer and the Commissioner as income in the year in which the policies were written; and (3) that the Commissioner, in the exercising of his wide discretion, was of the opinion that the method of accounting maintained by the taxpayer in prior years, when no account was set up and no deductions claimed for the contingent liability for return commissions, accurately reflected the taxpayer's income.

The reasons given by the Court for its ruling in that case clearly point the factual differences which distinguish it from the instant case. Here, there is uncontradicted evidence that the commissions payable to petitioner were in part consideration for services to be performed in the future; the petitioner has not at any time treated the full amount of the commissions as income in the years when the policies were written; and petitioner's deferment of the accrual of portions of the commissions to the years extending over the terms of the policies did not result from any change in its established method of accounting.

Of even more importance, we think, is the fact that here, contrary to the situation in the *Brown* case, *supra*, the full commissions were not received by the petitioner in the years when the policies were written and were not subject to petitioner's unrestricted use and enjoyment.

In *San Francisco Stevedoring Co.*, 8 T. C. 222, we said that "Income does not accrue to a taxpayer using an accrual method until there arises in him a fixed or unconditional right to receive it."

We think that the respondent was in error in including in petitioner's income the commissions which it had not received and to which, under its contract with Houston, it had no fixed right at the close of the year.

(2) *Officers' compensation.*—The salaries and bonuses paid to Beach and Glover by the petitioner in 1941, 1942, 1943, and 1945 are involved in this issue. Beach was an officer of, and drew salaries, and in some years bonuses, from all three of the taxpayer companies. Glover had no interest in W. B. Leedy Co., but was an officer of, and drew compensation from, the petitioner and from Leedy-Glover, Inc. The amounts of such salaries and bonuses paid to, and claimed as deductions by, the petitioner and the adjustments made by the respondent are shown above, with such other facts pertaining to the question of the reasonableness of such compensation for the services performed as the evidence contains. The evidence, in our opinion, fails to justify the full amounts claimed by petitioner, but, on the other hand, it indicates that the amounts allowed by the respondent are somewhat less than reasonable compensation for the services performed by the officers. We have concluded, and have so found above, that reasonable compensation for the services performed for the petitioner by these officers for each of the years involved is $12,000 for Beach and $10,000 for Glover. The amounts so determined represent our best judgment, based on all the factors disclosed by the evidence, as to the compensation properly allowable to each of the officers for the years involved.

(3) *Allocation of expenses.*—All three of the taxpayer companies occupied offices in the same building and made common use of certain office facilities and clerical help. They apportioned, or allocated, ex-

penses for 1941, 1942, and 1943 among themselves on the basis of the amount of the services and benefits received by each of them. The respondent made a reallocation of the expenses among the companies under section 45, Internal Revenue Code. He based his allocation on the gross income of each of the companies.

Section 45 of the code [1] authorizes the Commissioner to make such allocation only where two or more organizations are owned or controlled by the same interests and where he determines that "such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses." The Commissioner is given broad discretionary powers in the application of this provision of the statute and his determination can be set aside only if shown to be arbitrary and unreasonable. The burden is upon the taxpayer to prove it so. *Welworth Realty Co.*, 40 B. T. A. 97; *Seminole Flavor Co.*, 4 T. C. 1215. The adjustments which the respondent has made with respect to each of the companies are set out above. In each year the amount claimed by the petitioner was reduced, and the amounts claimed by the other two companies were increased accordingly. The amounts claimed by the petitioner were reduced from $11,691.48 to $7,294.33 in 1941; from $11,689.10 to $10,637.52 in 1942; and from $11,702.87 to $7,129.97 in 1943. The evidence is that the petitioner used more office space and required more services than either of the other companies. The Commissioner's allocation so recognizes, for each year the amount allocated to the petitioner is approximately twice that allocated to the other two companies combined. Although the method of allocation used by the respondent, based on the gross income of each company, might appear to be arbitrary, we can not say, on any evidence before us, that it led to arbitrary and unreasonable results. Our concern is more with the ultimate results arrived at by the Commissioner than the methods which he uses. Exact records of the costs of the operations of each of the companies might have shown a result different from that reached by the respondent, but, admittedly, no such records were kept and could not now be established. Thus, the petitioner is itself responsible for the absence of proof upon which the respondent's determination might be challenged.

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

On the evidence before us, the respondent's determination must be sustained.

(4) *Embezzlement losses.*—The petitioner, W. B. Leedy & Co., claimed the deduction in 1940 of $2,519 as a loss due to the embezzlement of funds by one or more of its employees. The funds in question were rentals which it had collected as agent for the landlords. The petitioner discovered the shortage in April 1940 and restored the funds in April or May of that year. The respondent disallowed $1,029 of the $2,519 claimed on the ground that that portion of the loss was sustained in 1939 and should have been deducted in that year instead of 1940 when the loss was discovered.

The petitioner contends here that the misappropriated funds were not its own, but were the property of the landlords, and that it sustained no loss until it recognized its liability for the amount of the embezzlement and reimbursed the owners for their loss.

The respondent relies upon the general rule that embezzlement losses must be deducted in the year when the embezzlement occurs, but see *Boston Consol. Gas Co.* v. *Commissioner*, 128 Fed. (2d) 473, and *Gwinn Bros. & Co.*, 7 T. C. 320. However, we think the petitioner is correct in its contention that the embezzled funds were not its property, but belonged to the landlords for whom it had been collected, and that petitioner sustained its loss when it restored the funds in 1940. *John H. Farish & Co.* v. *Commissioner*, 31 Fed. (2d) 79. See also *Israel T. Deyo*, 9 B. T. A. 900, and *Peter Frees, Jr.*, 12 B. T. A. 737.

*Decisions will be entered under Rule 50.*