THE HEARST CORPORATION, TRANSFEREE, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19786. Promulgated April 10, 1950.

*Ward E. Lattin, Esq.*, for the petitioner.
*John J. Madden, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: A deficiency in personal holding company surtax of Hearst Estate, Inc., for 1941 in the amount of $15,718.97 has been determined against petitioner as transferee. The transferee liability is conceded and the questions are whether payments of interest made by petitioner's transferor on money borrowed by it for the benefit of its parent are deductible either as such or as dividends; and whether, if not, the statute of limitations bars the collection of the deficiency. All of the facts have been stipulated and are hereby found accordingly.

The material portions of the stipulation are as follows:

(1) The petitioner is a corporation organized under and existing by virtue of the laws of the State of Delaware, and the principal office of petitioner is located at 959 Eighth Avenue, New York, New York. Petitioner is transferee of Hearst Estate, Inc., a California corporation, and this controversy involves personal holding company surtaxes of Hearst Estate, Inc., for the calendar year 1941.

\* \* \* \* \* \* \*

(3) Hearst Estate, Inc., filed a federal personal holding company tax return for the calendar year 1941, on Treasury Department Form 1120H, with the United States Collector of Internal Revenue for the First District of California, at San Francisco, California, on or before March 15, 1942. Hearst Estate, Inc., in said personal holding company return for the calendar year 1941, reported subchapter A net income, as defined in Section 505 of the Internal Revenue Code, in the amount of $294,238.24 and a dividends-paid credit of $299,174.92. In the notice of deficiency, which was mailed to petitioner on May 11, 1948, an increase of subchapter A net income to $311,959.52 and a decrease of the dividends-paid credit to $292,639.56 was shown, with resulting undistributed subchapter A net income of $19,319.96 being determined. A deficiency of $15,718.97 was determined by the Commissioner, said deficiency resulting from the computation of a tax at personal holding company surtax rates on said amount of $19,319.96.

(4) The difference in the amounts of subchapter A net income and dividends-paid credit as shown in the return and as shown in the Commissioner's notice of deficiency, results from adjustments made by the Commissioner, the principal adjustment so made, and the only one involved in this controversy (the others being conceded by petitioner as correct), being that pertaining to interest paid by Hearst Estate, Inc., under circumstances as hereinafter set forth.

(5) During the calendar year 1941 Hearst Estate, Inc., had bank loans outstanding and owed by it in the total daily average amount of $338,400, and during the same period made loans or advances to its parent company, The Hearst Corporation, in the total daily average amount of $249,187.05, with the result that the total daily average amount retained by Hearst Estate, Inc., for its own use during the year from such borrowed funds was $89,212.95. Hearst Estate, Inc., paid interest on the entire amount of said average loans of $338,400, said interest totaling $15,814.46, and deducted said sum of $15,814.46 in computing its 1941 net income for federal tax purposes, including personal holding company surtax purposes. In the computations as contained in the Commissioner's notice of deficiency taxpayer is allowed an interest deduction only with respect to amounts of interest paid on the average amount of $89,212.95 retained by Hearst Estate, Inc., for its own use from the total average loans owed by it during 1941, with the result that of the $15,814.46 of interest paid by it $4,169.19 was allowed as a proper deduction for 1941, and the remainder of $11,645.27 was disallowed as not constituting a proper interest deduction. The said interest of $11,645.27 paid by Hearst Estate, Inc., in 1941 was also determined by the Commissioner not to constitute dividends actually or constructively paid by Hearst Estate, Inc., in 1941 to its sole stockholder, to be taken into consideration in computing its dividends-paid credit for personal holding company surtax purposes.

(6) Interest payments were likewise made by Hearst Estate, Inc., with respect to the full amount of daily average bank loans owed by it and outstanding during 1939 and 1940, a portion of which bank loans, as in the year of 1941, were in turn advanced in such years to The Hearst Corporation by Hearst Estate, Inc. The amount of interest payments made with respect to that portion of the daily average bank loans so advanced to The Hearst Corporation in 1939 amounted to $10,315.46, and in 1940 to $11,439.91. Such amounts were determined by the Commissioner not to constitute deductible items of business expense (interest) in the years in which paid, and they were also determined not to constitute dividends actually or constructively paid by Hearst Estate, Inc., to its sole stockholder to be taken into consideration in computing the dividends-paid credit carryover which may be carried forward and used in determining the 1941 personal holding company tax liability of Hearst Estate, Inc.

(7) The petitioner and the Commissioner of Internal Revenue have executed Treasury Department Forms No. 977 extending to June 30, 1948, the time for assessment against petitioner of federal taxes of Hearst Estate, Inc.  *  *  *

The forms consent to a postponement of the assessment of transferee liability "in respect of any income, excess-profits or war profits taxes (including interest, additional amounts and additions to the tax provided by law)."

The stipulation concludes:

*  *  *  These four Forms 977 are the only agreements executed by petitioner extending the time for assessment against it of any federal taxes of any kind due from Hearst Estate, Inc.

(8) Hearst Estate, Inc., did not charge or receive any interest on the loans it made to its parent company.

A supplemental stipulation reads:

(1) The surplus of Hearst Estate, Inc., at the end of the calendar year 1940 amounted to $34,749.02 and at the end of the calendar year 1941 it amounted to $43,980.86.

Respondent's "disallowance" of a part of the interest deduction claimed by petitioner is not specifically described in the deficiency notice as "a distribution, apportionment or allocation." This is the language used in section 45, Internal Revenue Code,[1] upon which respondent now relies to justify his action in permitting petitioner to deduct the interest paid by it only on the loans it secured for itself and not on those of which its parent obtained the benefit.

If by its rejoinder petitioner suggests that there was a complete disallowance of the item, the facts seem to refute it. A part of the deduction was clearly allowed to petitioner. See *G. U. R. Co.*, 41 B. T. A. 223, 226; affd. (C. C. A., 7th Cir.), 117 Fed. (2d) 187. A distribution or apportionment implies, however, an allowance somewhere else of the disallowed deduction, so that here the parent would obtain the benefit of the payment attributed to it and withheld from petitioner's transferor. So stated, the contention has merit, as well as significance, as will presently appear.

There is nothing in respondent's action which suggests that he has failed to apply the section accordingly. We shall assume that he did so correctly, and that disallowance of the interest item to the extent that petitioner's transferor obtained no benefit from it was hence a proper application of the section.

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances, between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

It does not follow, however, that respondent's result was correct. Petitioner's second proposition is that, if the amount in question was not properly deductible as interest because the parent in effect received the benefit of it, it was tantamount to a transfer of profits to the parent, which is frequently held to be the equivalent of the distribution of a dividend. *Elizabeth Susan Strake Trust*, 1 T. C. 1131; *Commissioner* v. *Western Union Telegraph Co.* (C. C. A., 2d Cir.), 141 Fed. (2d) 774; certiorari denied, 322 U. S. 751; *Palmer* v. *Commissioner*, 302 U. S. 63; *Hugh H. Miller*, 25 B. T. A. 418; *V. U. Young*, 5 T. C. 1251; *Limericks, Inc.*, 7 T. C. 1129, 1136; affd. (C. C. A., 5th Cir.), 165 Fed. (2d) 483. The payment of a dividend would, equally with the payment of interest, constitute a deduction from personal holding company income [2] and leave petitioner's transferor and its tax liability in exactly the same place as though the interest deduction had been allowed.

Likewise, the situation of the parent would be totally unchanged by such treatment. If it be thought of as having received dividends in the amount of the interest paid for it by its subsidiary, it must also under the allocation theory of section 45 be assumed to have had a corresponding deduction for interest paid. Even if we go beyond the situation of the petitioner's transferor and consider the effect upon the combined tax liabilities of the two enterprises, the conclusion is thus unavoidable that under section 45 and within the peculiar facts of this proceeding, there is no deficiency with respect to this issue. Treatment of the disallowed payments as dividends, and the corresponding deduction to which the parent could lay claim, dispose, as we have said, of any possible argument that respondent's action is necessary in order "to prevent evasion of taxes or clearly to reflect the income of any of such organizations."

*Rodney, Inc.*, 2 T. C. 1020; affd. (C. C. A., 2d Cir.), 145 Fed. (2d) 692, is not to the contrary. That case dealt not with allocations of income under section 45, but with the effect of payments made upon the dissolution of a subsidiary. It was appropriately and necessarily there held with respect to payments of interest on the obligations of a liquidated subsidiary that "any payment of such liabilities made by petitioner after the liquidation was in the nature of a capital adjustment and was not to be charged against income." For similar reasons, the payments could not be thought of as dividends.

This disposition of the principal issue makes it unnecessary to consider petitioner's alternative contention that its waivers of the statute of limitations were not broad enough to cover the type of tax here involved.

*Decision will be entered under Rule 50.*

---

[2] Internal Revenue Code, sec. 504.