CHELSEA PRODUCTS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19849, 22920. Promulgated April 19, 1951.

Ferdinand Tannenbaum, Esq., and Walter F. Sloan, Esq., for the petitioner.

Maurice S. Bush, Esq., for the respondent.

OPINION.

Black, *Judge:* The sole issue which we have to decide in these proceedings is whether the net income of the sales companies for their taxable periods in 1944 and for the calendar year 1945 should be included in the net income of petitioner for the calendar years 1944 and 1945, respectively.

In support of his determination that the net income of the sales companies should be included in the income of petitioner, respondent relies upon three propositions which may be stated as follows:

1. The corporate entity of each sales company should be disregarded.

2. The net income of the sales companies should be combined with petitioner's net income under section 45 of the Internal Revenue Code which authorizes respondent to allocate "gross" income, deductions, credits, or allowances between organizations if necessary to prevent tax evasion or clearly to reflect income.

3. Control of the sales companies was acquired for the "principal purpose" of evading or avoiding Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance under section 129 of the Internal Revenue Code.

We shall take up these propositions in their order.

1. *The corporate entities of the sales companies should be disregarded.*—In discussing the foregoing proposition we shall not repeat the facts which have been embodied in our findings of fact. It is sufficient to say that we think these facts show the sales companies were organized for business purposes and that in the taxable years they each did in fact engage in business activities and, therefore, the corporate entity of each company should be recognized. *National Carbide Corp.* v. *Commissioner*, 336 U. S. 422; *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436.

In the *National Carbide* case, *supra*, the taxpayers were wholly-owned subsidiaries of a parent corporation which utilized them as operating companies in the manufacture and sale of products. They operated pursuant to contracts with the parent which provided that the subsidiaries were employed as agents of the parent, that the parent would furnish working capital and that all profits in excess of 6 per cent on their capitalization would be paid to the parent. The contracts also provided that the parent was to provide plants and machinery, executive management and office facilities, and that no interest was payable on loans from the parent. The head of each divi-

sion of the parent was in turn the head of the same division of the subsidiary. The leading officials of the parent held similar positions in the subsidiaries. The directors of the subsidiaries met only to ratify the actions of the directors and officers of the parent. The Supreme Court held that the subsidiaries were taxable on the income turned over to the parent, as well as the 6 per cent retained as a return on capital. The Supreme Court said that the Court of Appeals for the Second Circuit correctly held that:

> * * * when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits can make no difference tax-wise. * * *

In the *Moline Properties* case, *supra*, the Supreme Court said that whatever the purpose of organizing the corporation "so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a 'separate taxable entity'."

Therefore, relying on the Supreme Court's decisions in the *National Carbide Corp.* case and the *Moline Properties, Inc.*, case, we hold against respondent's contention that the corporate entities of the sales companies should not be recognized for tax purposes.

2. *Applicability of section 45, I. R. C.*—Respondent's next contention is that even though the separate entities of the sales companies are recognized that nevertheless their respective net incomes should be allocated to petitioner under the provisions of section 45, I. R. C.[1]

It is true, of course, that the facts in the instant case show that petitioner and the sales companies were owned and controlled by the same interests and in that respect one of the conditions prescribed by section 45 is present here. But, while that is true, the Commissioner has not distributed, apportioned or allocated gross income, deductions, credits, or allowances between or among such trades or businesses as contemplated by the statute where section 45 is to be applied. On the contrary, respondent has "combined" the "net" income of the sales companies with the "net" income of petitioner. Section 45 does not grant such authority to respondent. In *Seminole Flavor Co.*, 4 T. C. 1215, we said that section 45:

> * * * does not specifically authorize him "to combine." Certainly, the Commissioner's own regulations, section 19.45–1, Regulations 103, negative the use of section 45 for the purpose of combining or consolidating the separate net income of two or more organizations, trades or businesses, * * *

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

Section 29.45–1 of Regulations 111 governing the years here involved is substantially the same as the section in Regulations 103 referred to by us in the *Seminole Flavor Co.* case, *supra*, which reads in part as follows:

\* \* \* It is not intended (except in the case of the computation of consolidated net income under a consolidated return) to effect in any case such a distribution, apportionment, or allocation of gross income, deductions, or any item of either, as would produce a result equivalent to a computation of consolidated net income under section 141.

Respondent has not attempted to distribute, apportion, or allocate "deductions, credits, or allowances" between the sales companies and petitioner. On the contrary, we think he has recognized that the books of account accurately reflect the transactions of the companies by using the net income of each sales company, per its books and tax returns, as the exact amount of net income to be included in the net income of petitioner for each taxable year, with the minor exception that for 1945 he increased the net income of each sales company by $312.50 before adding it to the net income of petitioner. In *Seminole Flavor Co., supra*, we said:

\* \* \* The accuracy of the books of account and record is emphasized by the Commissioner's use of the partnership net profits, per its books, as the exact amount of gross income to be allocated for each taxable year to the petitioner \* \* \*

The inapplicability of section 45 as the Commissioner contends it should be applied here appears not only on the face of the statute but also from its interpretation in *Miles-Conley Co.*, 10 T. C. 754, affirmed on other grounds 173 F. 2d 958: *Buffalo Meter Co.*, 10 T. C. 83; and *Seminole Flavor Co., supra*. As to the applicability of section 45, I. R. C., under the facts of this case we hold against respondent and sustain petitioner.

3. *Applicability of section 129, I. R. C.*—Respondent contends in the last place that the net income of the sales companies should be taxed to petitioner under the provisions of section 129. I. R. C.[2]

[2] SEC. 129. ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS PROFITS TAX.

(a) DISALLOWANCE OF DEDUCTION, CREDIT, OR ALLOWANCE.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation.

There have been two recent cases promulgated by the Tax Court in which the Commissioner sought to apply section 129, I. R. C. In both of those cases we held that section 129 was not applicable because the taxpayer corporations there involved had been organized for business purposes. See *Alcorn Wholesale Co.*, 16 T. C. 75, and *Berland's Inc. of South Bend*, 16 T. C. 182.

In our findings of fact in the instant case we have found that:

The principal purpose for the organization for each of the sales companies was to carry on business and not to aid petitioner or the sales companies in the evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which the respective corporations would not otherwise enjoy.

This finding, we think, disposes of respondent's contention that section 129 is applicable to the facts of this case. *Alcorn Wholesale Co.* and *Berland's Inc. of South Bend*, both *supra*.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

RICE, *J.*, dissents.

---

OPPER, *J.*, dissenting: The core of the present question is whether a reallocation of income is necessary under section 45, Internal Revenue Code, to prevent distortion of petitioner's income. See *Hearst Corp.*, 14 T. C. 575. Since no arm's length bargaining occurred between these commonly controlled entities, see *Helvering* v. *U. S. Industrial Alcohol Co.* (*W. Va.*), (C. A. 2), 137 F. 2d 511; *Eskimo Pie Corp.*, 4 T. C. 669 affd. (C. A. 3), 153 F. 2d 301, our concern must be whether petitioner received from the sales companies fair value for its products. If not, distortion of income resulted. *G. U. R. Co.*, 41 B. T. A. 223, affd. (C. A. 7), 117 F. 2d 187; *National Securities Corp.*, 46 B. T. A. 562, affd. (C. A. 3), 137 F. 2d 600, certiorari denied, 320 U. S. 794.

Petitioner has failed to prove that it received fair value, or that its subsidiaries performed any valuable function.[1] The evidence, in fact, indicates the contrary, and that petitioner granted to its subsidiaries excessive discounts.[2] By selling below the standard fair

---

[1] An analysis of the findings shows that the only services purportedly rendered by the sales companies during each of the tax years were to bill customers. to receive payment from them, and to enter into sales agreements with sales agents. All of these functions had previously been performed by petitioner. When performed during the tax years nominally on behalf of the sales companies, they were actually rendered by officers and employees of petitioner for whose compensation full deduction has been allowed by respondent's determination. Hence, it appears that the sales companies rendered no service of any value to petitioner during the tax years in issue.

[2] A special 15 per cent discount, purportedly to cover costs, actually gave a gratuitous profit to the subsidiaries. That is really the only amount in controversy. Petitioner's vice president testified with respect to the discounts:

"It took considerable study to arrive at that 25%. The 50% is very easy to explain because it is passed on to the wholesale jobber. * * * The 50% is the standard discount that is given by manufacturers to wholesale jobbers whether it be our company or any of our competitors. *That is a normal, justifiable discount*

market price, petitioner "voluntarily released to another * * * a part of its earnings for no consideration whatever," *R. O. H. Hill, Inc.*, 9 T. C. 153, 157, a typical occasion for the corrective provisions of section 45 to be brought into play. *Welworth Realty Co.*, 40 B. T. A. 97.

Section 45 clearly authorizes the Commissioner in such circumstances to allocate gross income and deductions which, in effect, is what he did.[3] That the amounts of gross income allocated to petitioner should correspond with the net income of the sales companies[4] is a reasonable corollary of the fact, which the record amply demonstrates, that the subsidiaries rendered no services of any value such as to entitle them to a portion of the business profit.

Disposition in respondent's favor under section 45 would dispense with the necessity of considering both of his other contentions. But it is not as clear as seems to be assumed that the case is controlled by *National Carbide* and *Moline Properties.* Cf. *Higgins* v. *Smith*, 308 U. S. 473. Nor does it seem to me possible to say so cavalierly that section 129 has no application when the alleged business purposes are as flimsy as they were here; when the question is concededly one of fact, *Alcorn Wholesale Co.*, 16 T. C. 75; *Berland's Inc. of South Bend*, 16 T. C. 182; and when as the hearer of the evidence, I would have found that no substantial purpose was, nor could have been expected to have been, served by the sales companies, see *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, except the tax avoidance objective which has apparently been attained.

TURNER, TIETJENS, and RAUM, *JJ.*, agree with this dissent.

for them [and was allowed by respondent]. The 25% [additional] comprises 10% commission to the agent [also allowed by respondent] and then we have 15% to run our business." [Emphasis added.]

[3] Respondent's action is not the same as a consolidated return, if that should be material. Here items of gross income and deductions were left with the sales companies. Respondent's regulations, read as a whole, have as their apparent purpose to make it clear that the Commissioner may not be compelled to apply section 45 by taxpayers who, for example, might attempt to substitute it for consolidated returns. Cf. *Remco Steamship Co.*, 30 B. T. A. 579, affd. (C. A. 9), 82 F. 2d 988, certiorari denied, 299 U. S. 555.

[4] Respondent's deficiency notice treated as petitioner's income "the amounts * * * *alleged to represent* net income as corrected of" the Sales Companies. This was no more than a practical shorthand expression in a field where practicality is assumed to be the touchstone. See *Leedy-Glover Realty & Insurance Co.*, 13 T. C. 95, 107, affd. per curiam (C. A. 5), 184 F. 2d 833.