NATIONAL SECURITIES CORPORATION, SUCCESSOR BY MERGER TO AMERICAN GAS & ELECTRIC SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103143.   Promulgated March 10, 1942.

*William H. Harding, Esq.,* and *H. C. Kilpatrick, Esq.,* for the petitioner.

*Dean P. Kimball, Esq ,* for the respondent.

OPINION.

SMITH: Petitioner's contentions are that the respondent has not applied section 45, as he professes to have done, but has disallowed the claimed deduction in whole and without statutory authority; that in any event section 45 does not give the respondent authority to make an allocation of the loss in question; and that the deduction claimed is clearly allowable under section 23 (f) and (j) and section 113 (a) (8) of the Revenue Act of 1936.

The sections of the statute referred to above, and others which petitioner deems pertinent to the question in issue, read in part as follows:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*   *   *   *   *   *   *

(f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

*   *   *   *   *   *   *

(j) CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117 (d).

SEC. 117. CAPITAL GAINS AND LOSSES.

*   *   *   *   *   *

(d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *

SEC. 112. RECOGNITION OF GAIN OR LOSS.

*   *   *   *   *   *   *

(b) EXCHANGES SOLELY IN KIND.—

*   *   *   *   *   *   *

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock * * * in such corporation, and immediately after the exchange such person or persons are in control of the corporation; * * *

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

*   *   *   *   *   *   *

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock * * * in connection with a trans-

action described in section 112 (b) (5) * * *
then the basis shall be the same as it would be in the hands of the transferor, * * *

Section 45 above confers upon the respondent the power, whenever he deems it necessary in order to prevent evasion of taxes or clearly to reflect income, to distribute, apportion, or allocate gross income or deductions. This is a discretionary power and once the respondent has exercised it his action can be set aside only when clearly shown to be "arbitrary and capricious." See *Asiatic Petroleum Co. (Delaware) Ltd.*, 31 B. T. A. 1152; affd., 79 Fed. (2d) 234; certiorari denied, 296 U. S. 645; *Welworth Realty Co.*, 40 B. T. A. 97; *G. U. R. Co.*, 41 B. T. A. 223; affd. (C. C. A., 7th Cir.), *G. U. R. Co.* v. *Commissioner*, 117 Fed. (2d) 187.

The section does not authorize the respondent arbitrarily to disallow a deduction, however, *General Industries Corporation*, 35 B. T. A. 615; *Tennessee-Arkansas Gravel Co.* v. *Commissioner*, 112 Fed. (2d) 508, which the petitioner contends is what the respondent has done in determining the deficiency herein.

This contention, we think, is not well founded. As was pointed out in *G. U. R. Co.* v. *Commissioner*, *supra*, the allocation of a deduction to one taxpayer necessarily requires its disallowance to another. The language used in *G. U. R. Co.* was not intended to deny this postulate. Whether the allocation is of a portion or all of the deduction claimed is of no consequence. Certainly section 45 should not be construed as conferring upon the respondent the power to allocate to one taxpayer a portion of a deduction and not the whole of it. We think that the statement contained in the deficiency notice to the petitioner herein may reasonably be construed as showing a determination in accordance with section 45, that is, an allocation of the entire deduction claimed by the petitioner to its parent company and, necessarily, the resulting disallowance of the entire deduction to the petitioner.

Whether or not this deduction was actually taken into the parent company's accounts in the determination of its tax liability for 1936 is not material to this proceeding. The parent company is not before us. It is stipulated, however, that the parent company's 1936 return discloses an excess of capital losses on the sale of securities over capital gains of approximately $15,600, of which only $2,000 is an allowable deduction under section 117 of the 1936 Act. As a practical matter, then, it would be futile for the respondent to throw any additional capital losses into the computation of the parent company's tax liability for 1936.

Does this fact in itself, that is, the incapacity of the parent company to absorb the deduction, prevent the application of section 45 so as to disallow the deduction to the petitioner? In other words,

must the actual loss sustained on the ultimate sale of the shares be allowed as a tax saving deduction (subject only to its limitation under the capital loss provisions of the statute) to some or all of the related group of taxpayers? We think not. The power to "allocate" the deduction, conferred by section 45, is not a mandate to *allow* the deduction. The eventuality that some or all of the allocated deduction might not be available to the one to whom it should be allocated is a matter that was not provided for in section 45 and, we may assume, was not intended to affect its application.

The respondent having made his allocation under section 45, the question for the Board to determine is whether or not the allocation is just and equitable, or whether it is "arbitrary and capricious."

Petitioner urges that the denial of the claimed deduction by the application of section 45 deprives it of the right conferred by sections 113 (a) (8) and 112 (b) (5) set out above. These sections provide in short that where property is transferred to a corporation in exchange for its stock and the transferor remains in control of the corporation no gain or loss shall be recognized on the transaction (section 112 (b) (5)), but the basis for computing gain or loss to the transferee shall be the same as it was in the hands of the transferor.

We do not see that the respondent has gone counter to either of these provisions of the statute. He has not determined any tax liability on the transfer of the Standard stock from the parent to American Gas, which transaction was clearly nontaxable under section 112 (b) (5), and he has used the cost basis of such stock to the transferor in computing the loss of the transferee (petitioner) on the sale of the shares in accordance with section 113 (a) (8). What the petitioner has to complain of is the respondent's treatment of this loss as a right of deduction, rather than the computation of the loss under the provisions of sections 113 (a) (8) and 112 (b) (5). We find nothing in those sections which in any manner limits the application of section 45.

The facts in the instant case are not distinguishable in any material respect from those in *G. U. R. Co.* v. *Commissioner, supra*, except that the Commissioner there allocated a portion only of the loss deduction to the taxpayer, computed upon the basis of the fair market value of the shares sold at the time they were acquired from another corporation with whom it had a common ownership. The distinction, we think, is not one affecting our present question; for, as stated above, we do not think that section 45 should be construed as giving the respondent the power, in the exercise of his sound discretion, to allocate any portion of a loss but not the whole of it. Moreover, the respondent now concedes that the petitioner is entitled to the same measure of loss which was allowed to the taxpayer in the *G. U. R. Co.*

case; that is, such portion of the loss as results from using as a basis to petitioner the fair market value of the shares at the time petitioner acquired them. In *Pennsylvania Indemnity Co.*, 30 B. T. A. 413; affd., 77 Fed. (2d) 92, we limited the loss deduction to such an amount, on facts not dissimilar from those in the instant case, where the Commissioner had not made an allocation under section 45 but had merely disallowed a portion of the loss claimed.

We are not impressed with the argument made by the petitioner that the transaction here by which petitioner acquired the shares in question from its parent company was motivated purely by sound business reasons disassociated from any .consideration of tax consequences and that section 45 therefore has no application. Whatever the motive, there was a shift in the economic benefits to be derived from the deduction of the loss on the ultimate sale of the shares, which we think justified the application of section 45. The express purpose of the section is not only to prevent "evasion" of taxes but "clearly to reflect the income" of the members of the related group. We think that the allowance of the deduction of the entire amount of the loss claimed by petitioner computed on the basis of cost of the shares to the parent, without regard to their fair market value at the time acquired by petitioner or their cost to petitioner, would not clearly reflect petitioner's income for the taxable year.

Obviously, petitioner did not acquire those shares as a business investment. They were all but worthless at the time of acquisition, having depreciated from approximately $140 a share when purchased by the parent company to about $8.50 when transferred to petitioner. The indicated value of petitioner's shares given in exchange was over $90 per share, it being stipulated that petitioner's net worth was not less than $349,000 and its outstanding capital stock 3,800 shares, including the 800 shares issued to the parent company in exchange for the Standard shares. As a business measure petitioner would hardly have transferred over $73,000 of its own stock for $8,562.50 worth of the Standard stock. See *G. U. R. Co.* v. *Commissioner, supra*, and *Pennsylvania Indemnity Co., supra*.

Since the respondent now concedes that the petitioner is entitled to the deduction of a loss equal to the difference between the fair market value of the shares at the time petitioner acquired them and the amount for which they were sold, effect should be given to such concession in the recomputation of the deficiency.

Reviewed by the Board.

*Decision will be entered under Rule 50.*