## NATIONAL SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8172.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 22, 1942.

Decided July 28, 1943.

H. Cecil Kilpatrick, of Washington, D. C. (William H. Harding, of New York City, and Mills & Kilpatrick, of Washington, D. C., on the brief), for petitioner.

Newton K. Fox, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The petitioner, National Securities Corporation, is the successor of the taxpayer, American Gas & Electric Securities Corporation, and is liable by reason of its merger with the taxpayer for all obligations of the latter, including federal income taxes. During its entire existence the taxpayer was a wholly owned subsidiary of American Equitable Assurance Company of New York. The taxpayer's income and expenses were recorded in separate books of account kept by it and its accounts were not commingled with those of the parent. In August and September, 1929 the parent purchased as an investment 1,000 shares of the common stock of Standard Gas and Electric Company at a cost of $140,378.06. By 1933 the parent's purchases of Standard stock had increased to a total of 3,500 shares, at a cost of $418,780.19. During 1935 reorganization of Standard was commenced under Section 77B of the Bankruptcy Act. 11 U.S.C.A. § 207. At the close of that year the Standard stock, for which the parent had paid an average of approximately $120 per share, had decreased in value to $6.25 per share. In January, 1936 the parent sold 2,500 shares of Standard stock in the open market at prices ranging from $7.75 to $9.125 per share. On February 13, 1936 the parent delivered its remaining 1,000 shares of Standard to the taxpayer in exchange for

the latter's capital stock having a stated value of $10 per share and a market value of more than $92 per share. These shares on the date when delivered to the taxpayer had a market value of $8,562.50. On December 11, 1936 the taxpayer sold the Standard stock for $7,175.00. The proceeds of the sale were received and kept by the taxpayer. In its income tax return for 1936 the taxpayer claimed as a deductible loss $133,203.06 representing the difference between the cost of the 1,000 shares to the parent ($140,378.06) and the amount for which the taxpayer sold them ($7,175.00.)

The Commissioner disallowed in its entirety the deduction claimed by the taxpayer and assessed a deficiency. At the hearing before the Board of Tax Appeals, however, he conceded that the taxpayer was entitled to that part of the claimed deduction which represented the difference between $8,562.50, the fair market value of the Standard shares when acquired by the taxpayer, and $7,175.00, the amount for which the taxpayer sold them, or $1,387.50. The Board of Tax Appeals sustained the Commissioner's action as thus modified. 1942, 46 B.T.A. 562.

The Commissioner disallowed the loss upon authority of Section 45 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, p. 840, which provides: "In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, of businesses."

The taxpayer's first contention is that since Section 45 is a general statute dealing with the allocation of gross income and deductions it cannot be controlling here because Congress has specifically provided by Sections 112(b) (5) and 113(a) (8) of the same revenue act[1] that a corporation, which has acquired property from its controlling stockholder and which sells that property for an amount less than the origi-

---

[1] "Sec. 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

&ast;  &ast;  &ast;  &ast;  &ast;

"(f) Losses by Corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

&ast;  &ast;  &ast;  &ast;  &ast;

"(h) Basis for Determining Loss. The basis for determining the amount of deduction for losses sustained, to be allowed under subsection (e) or (f), shall be the adjusted basis provided in section 113(b) for determining the loss from the sale or other disposition of property." 26 U.S.C.A. Int.Rev.Acts, pages 827, 828.

"Sec. 112. Recognition of Gain or Loss

&ast;  &ast;  &ast;  &ast;  &ast;

"(b) Exchanges solely in kind

&ast;  &ast;  &ast;  &ast;  &ast;

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." 26 U.S.C.A. Int.Rev.Acts, page 855.

"Sec. 113. Adjusted basis for determining gain or loss

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

&ast;  &ast;  &ast;  &ast;  &ast;

"(8) Property acquired by issuance of stock or as paid-in surplus. If the property was acquired after December 31, 1920, by a corporation—

"(A) by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

"(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made." 26 U.S.C.A. Int.Rev.Acts, pages 859, 862.

nal cost of the property to its stockholder, may deduct the difference as a loss in computing its own net income for the year of the sale.

We think, however, that the petitioner misconceives the distinct functions of these provisions of the statute. Sections 112 and 113 were intended to regulate the time when certain gains or losses are to be recognized for tax purposes and the cost bases to be used in determining the amounts of such gains or losses. It is true that they likewise lay down a general rule to determine which taxpayer shall take such gains or losses into account. These sections were followed in the present case by the Commissioner when he determined that no loss should be recognized upon the transfer of the Standard shares by the parent to the taxpayer and that the loss sustained by the taxpayer upon the later sale of these shares should be measured by their original cost to the parent.

Section 45 on the other hand is addressed to the wholly different problem of providing a more appropriate manner of allocating income and deductions when the application of the general rules of the statute will not clearly reflect the true income. To understand this we must go back to the provisions of Section 240 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev. Acts, page 191. That section authorized affiliated corporations to file consolidated returns. Subsection (f) of Section 240 authorized the Commissioner "In any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests" to consolidate the accounts of such related trades or businesses "if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses." The Revenue Act of 1928 entirely eliminated the right of affiliated corporations to file consolidated returns and the provisions of Section 240 of the 1926 Act accordingly do not appear in the 1928 Act. In lieu of them Congress inserted the provisions of Section 45, 26 U.S.C.A. Int.Rev.Acts, page 364, which as the report of the Ways and Means Committee[2] of the House of Representatives pointed out were based upon Subsection (f) of Section 240 of the 1926 Act, "broadened

considerably in order to afford adequate protection to the Government made necessary by the elimination of the consolidated return provisions of the 1926 Act."

■ It has not been suggested that Sections 203 and 204 of the 1926 Act, 26 U.S. C.A. Int.Rev.Acts, pages 148, 151 (the precursors of Sections 112 and 113) were inconsistent with Section 240 so as to prevent a corporation in the situation of the present taxpayer from joining with its parent in filing a consolidated return. We see no greater inconsistency between Section 45 and Sections 112 and 113. Section 45 is directed to the correction of particular situations in which the strict application of the other provisions of the act will result in a distortion of the income of affiliated organizations. In every case in which the section is applied its application will necessarily result in an apparent conflict with the literal requirements of some other provision of the act. If this were not so Section 45 would be wholly superfluous. We accordingly conclude that the application of Section 45 may not be denied because it appears to run afoul of the literal provisions of Sections 112(b) (5) and 113(a) (8) if the Commissioner's action in allocating under the provisions of Section 45 the loss involved in this case was a proper exercise of the discretion conferred upon him by the section.

■ By Section 45 Congress has conferred authority upon the Commissioner to allocate deductions "if he determines" that such allocation "is necessary". This is a broad discretion, limited only in that the necessity must arise "in order to prevent evasion of taxes or clearly to reflect the income." G. U. R. Co. v. Commissioner, 7 Cir., 1941, 117 F.2d 187.

■ The Commissioner takes the position that allocation was necessary in order clearly to reflect the income. In this determination he was sustained by the Board. Our examination of the facts convinces us that this determination was neither arbitrary nor capricious. The parent made the investment in Standard stock in 1929, held on to the stock as an investment until 1936, concluded to rid its own portfolio at a time when the stock had become well nigh valueless and then, instead of selling on the market, taking its loss and marking "finis" to a most unprofitable venture, transferred the stock to its wholly owned subsidiary. It

---

[2] H. R. 2, 70th Cong., 1st Sess.

seems most reasonable to treat the loss as one which had in fact been sustained by the parent rather than by its subsidiary. The shifting of the loss to the subsidiary gives an artificial picture of its true income and one which it was unnecessary for the Commissioner to accept. The shares for which the taxpayer claims a loss of $133,203.06 had been acquired by it for its own stock having a declared value on its books of only $8,000 and a market value of only about $75,000. The Commissioner was not bound to accept the petitioner's explanation that the parent transferred the stock solely for the purpose of ridding itself of an investment which it was unwise for an insurance company to retain and not for the purpose of tax avoidance. The Commissioner was justified in finding that the taxpayer's income was not clearly reflected by its return for 1936 since the return included a loss which was in fact incurred by the parent. We conclude that the Commissioner's action was neither arbitrary nor capricious.

Finally the taxpayer contends that in fact the Commissioner did not allocate the loss as Section 45 requires but merely disallowed it to the taxpayer. As we have seen, counsel for the Commissioner at the hearing before the Board conceded that $1,387.50 of the $133,203.06 loss should be allowed to the taxpayer and the Board's decision approved this allowance. For all practical purposes this was an allocation of the remainder of the loss to the parent. For in his deficiency notice the Commissioner stated that he was disallowing the deduction to the taxpayer "by application of the provisions of Section 45 of the Revenue Act of 1936". There is clearly implicit in this disallowance of the loss to the subsidiary on the authority of Section 45 a finding that the loss has been allocated to the parent. This is true even though under the circumstances of this case such an allocation would have had no practical effect upon the parent's income tax for 1936.[3]

The decision of the Board of Tax Appeals is affirmed.

---

[3] Though the parent's liability for tax is not here involved it appears from the stipulation that in its income tax return for that year the parent reported $1,706,683.76 profits from the sales of stock and $1,723,376.88 losses. This resulted in a net capital loss of $16,693.12. Since sections 23(j) and 117(d) of the Revenue Act of 1936 permit deductions arising from losses from sales or exchanges of capital assets to be taken only to the extent of $2,000 the parent could not have derived any actual tax benefit from an allocation of the losses from the sale of the Standard stock.