Francis L. ROONEY and Irene Rooney, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17313.

United States Court of Appeals Ninth Circuit.

June 29, 1962.

---

Howard & Prim, and N. Richard Smith, San Francisco, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Myron C. Baum, Harold M. Seidel, Lee A. Jackson, and John Jones, Attorneys, Tax Division, Department of Justice, Richard L. Carico, Asst. U. S. Atty., Washington, D. C., and Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This appeal raises two major issues: (1) the application of section 482 of the Internal Revenue Code of 1954 [26 U.S.C.A. § 482], which allows the Commissioner to reallocate expenses of the taxpayer, to the fact situation in this case, and (2) an interpretation of section 351 of the Internal Revenue Code of 1954 [26 U.S.C.A. § 351], which allows the taxpayer to transfer property to a corporation in exchange for stock, without recognition of gain or loss, and the effect that this section has on our controversy.

Appellants, husband and wife, are hop farmers. They raised and sold at a profit, crops in the years 1952 and 1953.

On July 31, 1954, the appellants transferred a crop, which had been planted, together with other assets of their farm, to F. L. Rooney Inc., hereinafter called "Corporation". This transfer was made in exchange for all of the stock of the Corporation. Prior thereto on Jan. 22, 1954, appellants had entered into a contract for the sale of the crop.

The appellants reported the expense of raising the crop, until July 31, 1954, on their individual income tax returns. As a result of this crop expense, appellants suffered a net operating loss for 1954, and attempted to carry this loss back to 1953 and 1952, thereby claiming a tax refund.

The crop was harvested in late August and early September 1954. The gross profit from the sale of the 1954 crop was treated as income by the Corporation. However, none of the expense of growing the crop, incurred prior to July 31, 1954, was treated as Corporation expense. Rather, as previously stated, it was treated as individual expense by the appellants.

The District Director of Internal Revenue, in order to clearly reflect the income of the Corporation, reallocated the expenses of growing the crop to the Corporation. This reallocation was based on section 482 of the Internal Revenue Code of 1954 [26 U.S.C.A. § 482].[1]

---

1. "§ 482. Allocation of income and deductions among taxpayers

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests,

The allocation of the 1954 expenses of the taxpayers to the Corporation eliminated their net operating loss for 1954 and their loss carry back for 1952 and 1953. Deficiencies assessed for the years 1952, 1953 and 1954 were heretofore paid by taxpayers. The present action arises from taxpayers' (appellants) claim for refund.

The appellants contend that their treatment of pre-July 31, 1954 expense, was justified by section 351 of the Internal Revenue Code of 1954 [26 U.S.C.A. § 351].[2]

(1) *Section 482 of Internal Revenue Code of 1954.*[3]

It is the position of the appellants that control must exist during the entire period in which the allocated items accrue, before section 482 of the Internal Revenue Code of 1954 can be properly applied. They contend that the Corporation came into existence on July 31, 1954, and thus the other entity disappeared.

■■ This contention is without merit. For purposes of federal taxation, there were two entities in existence for the tax year in question, i. e., the individuals and the Corporation. Each entity is required to file an income tax return. Taxpayers misinterpret the reach and purpose of the statute. Control or ownership must exist when the taxpayers deal with each other. The legislative history indicates that the predecessor of section 482 was designed to prevent the avoidance of tax or the distortion of income by the shifting of profits from one business to another. (H.Rep. No. 2, 70th Cong., 1st Sess., p. 146 (1939-1 Cum. Bull. (Part 2) 384, 395); S.Rep. No. 960, 70th Cong., 1st Sess., p. 24 (1939-1 Cum. Bull. (Part 2) 409, 426)). See Asiatic Petroleum Co. v. Commissioner, (2 Cir. 1935) 79 F.2d 234, 236–237; cert. den. 296 U.S. 645, 56 S.Ct. 248, 80 L.Ed. 459. This purpose is effected if the taxpayers are commonly controlled when they deal with each other; control at another time is unimportant. Section 39.45–1(c) of Treasury Regulations 118[4] supports this view in stating that transactions between

the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."

2. "§ 351. Transfer to corporation controlled by transferor
"(a) General rule.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control * * * of the corporation."

3. Section 482 of the Internal Revenue Code of 1954, was based upon Section 45 of the 1939 Code. H.Rep. No. 1337, Mar. 9, 1954, on the Internal Revenue Code of 1954 states,
"§ 482. Allocation of income and deductions among taxpayers
"This section corresponds to section 45 of the 1939 Code. No substantive changes have been made." U.S. Congressional Code and Administrative News 1954, Vol. 3, p. 4304.

4. Treasury Regulations 118 (1939 Code):
"Sec. 39.45-1 Determination of the taxable net income of a controlled taxpayer—
(a) Definitions.
"When used in this section:
"(1) The term 'organization' includes any organization of any kind, whether it be a sole proprietorship, a partnership, a trust, an estate, or a corporation (as each is defined or understood in the Internal Revenue Code or the regulations in this part), irrespective of the place where organized, where operated or where its trade or business is conducted, and regardless of whether domestic or foreign, whether exempt, whether affiliated, or whether a party to a consolidated return.
"(2) The terms 'trade' or 'business' include any trade or business activity of any kind, regardless of whether or where organized, whether owned individually or otherwise, and regardless of the place where carried on.
"(3) The term 'controlled' includes any kind of control, direct or indirect, whether legally enforceable, and however exercisable or exercised. It is the reality of the control which is decisive, not its form or the mode of its exercise. A

controlled taxpayers will be subject to special scrutiny.

A review of the pertinent case law indicates that the reallocation of the Commissioner in this case was valid.

In Jud Plumbing & Heating v. C.I.R., (5 Cir. 1946) 153 F.2d 681, a corporation was dissolved and all of its assets were transferred to the chief stockholder of the corporation.

The corporation when dissolved had several contracts in progress which were normally reported for income tax purposes on the completed contract method, i. e., income reported as of the date the contract is completed and final payment is made. The chief stockholder reported the income under those contracts as ordinary income to himself.

The Commissioner held under sections 41, 42 and 45 of the Internal Revenue Code of 1939 (the predecessor of section 482 [26 U.S.C.A. § 482]), that the income should be reallocated between the corporation and its successor based on relative percentages that the cost paid by the corporation during that part of the tax year prior to dissolution, and the cost paid by the successor after dissolution each bore to the profit from the completed contracts. This determination was followed in the Tax Court and in the Fifth Circuit, Jud Plumbing & Heating v. C. I. R., (supra). Thus section 45 of the Internal Revenue Code of 1939 (the predecessor of section

presumption of control arises if income or deductions have been arbitrarily shifted.

"(4) The term 'controlled taxpayer' means any one of two or more organizations, trades, or businesses owned or controlled directly or indirectly by the same interests.

"(5) The terms 'group' and 'group of controlled taxpayers' mean the organizations, trades, or businesses owned or controlled by the same interests.

"(6) The term 'true net income' means, in the case of a controlled taxpayer, the net income (or, as the case may be, any item or element affecting net income) which would have resulted to the controlled taxpayer, had it in the conduct of its affairs (or, as the case may be, in the particular contract, transaction, arrangement, or other act) dealt with the other member or members of the group at arm's length. It does not mean the income, the deductions, the credits, the allowances, or the item or element of income, deductions, credits, or allowances, resulting to the controlled taxpayer by reason of the particular contract, transaction, or arrangement, the controlled taxpayer, or the interests controlling it, chose to make (even though such contract, transaction, or arrangement be legally binding upon the parties thereto).

"(b) Scope and purpose. (1) the purpose of section 45 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true net income from the property and business of a controlled taxpayer. The interests controlling a group of controlled taxpayers are assumed to have complete power to cause each con-

trolled taxpayer so to conduct its affairs that its transactions and accounting records truly reflect the net income from the property and business of each of the controlled taxpayers. If, however, this has not been done, and the taxable net incomes are thereby understated, the statute contemplates that the Commissioner shall intervene, and, by making such distributions, apportionments, or allocations as he may deem necessary of gross income, deductions, credits, or allowances, or of any item or element affecting net income, between or among the controlled taxpayers constituting the group, shall determine the true net income of each controlled taxpayer. The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.

"(c) Application. Transactions between one controlled taxpayer and another will be subjected to special scrutiny to ascertain whether the common control is being used to reduce, avoid, or escape taxes. In determining the true net income of a controlled taxpayer, the Commissioner is not restricted to the case of improper accounting, to the case of a fraudulent, colorable, or sham transaction, or to the case of a device designed to reduce or avoid tax by shifting or distorting income, deductions, credits, or allowances. The authority to determine true net income extends to any case in which either by inadvertence or design the taxable net income, in whole or in part, of a controlled taxpayer, is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer."

482 [26 U.S.C.A. § 482]), may be used to reallocate profits so that there is a realistic appraisal of profit during the tax year in question.[5]

In the case of Tennessee Life Insurance Company v. Phinney, (5 Cir. 1960) 280 F.2d 38, the principle of the Jud Plumbing & Heating case, (supra) and the Dillard-Waltermire Inc., case (supra), was applied to a problem concerning deductions.

The facts in the Tennessee Life Insurance Company case were as follows: On January 1, 1953, X owned two subsidiaries, Y and Z. On January 19, 1953, X transferred all of the capital stock of Y to Z as a contribution to capital. On the same day Y adopted a plan of complete liquidation and transferred all of its assets to Z.

On January 1, 1953, Y had accrued approximately $143,500 in tax liabilities. Y attempted to claim a deduction for the entire amount of the taxes, and because the taxes were greater than the profits made during the period it was in operation in January of 1953, Y attempted to claim a refund based on net operating loss and a carry back to a preceding year. The Court held that:

"We think the authority granted in Section 45 permits the Commissioner to deny to one of two related taxpayers such part of a deduction as is necessary to prevent the true taxable income to be distorted, and to allocate a deduction to a taxpayer which, absent the authority of Section 45, would not be entitled to claim such deduction." p. 42.

Thus, the Fifth Circuit has applied section 45, Internal Revenue Code of 1939 (the predecessor of section 482 [26 U.S.C.A. § 482]), to a fact situation analogous to ours.[6]

Apart from the foregoing authorities, we believe that Central Cuba Sugar Co. v. C. I. R., (2 Cir. 1952) 198 F.2d 214, controls our controversy. There the facts were as follows: The taxpayer, a New York corporation, transferred all of its assets to the Central Cuba Sugar Company, pursuant to a reorganization under section 112, Internal Revenue Code of 1939 [7] (the predecessor of section 351 [26 U.S.C.A. § 351]).

In return, the taxpayer received capital stock which was then distributed to its shareholders. Following this transfer, the taxpayer claimed expenses of over $300,000. The basis therefor was that the reorganization occurred at a time when a substantial expense had been incurred in preparing for the spring grinding season, but before the year's crop had been sold and income recorded.

Taxpayer, because of the aforementioned expense, claimed a net operating loss and attempted to carry this loss back to the preceding year and claim a refund. A reallocation was made by the Commissioner, and his reallocation was upheld by the Second Circuit.

Our case is very similar to the Central Cuba Sugar Company case, (supra). Appellants incurred expense for a crop

5. See also: Dillard-Waltermire, Inc., v. Campbell, (5 Cir. 1958) 255 F.2d 433, which reaches a similar result.

6. But see: Simon J. Murphy Co., v. C. I. R., (6 Cir. 1956) 231 F.2d 639, which reaches a contrary result.

7. Section 351 of the Internal Revenue Code of 1954, is based upon Section 112(b)(5) of the 1939 Code. H.Rep. No. 1337, Mar. 9, 1954, on the Internal Revenue Code of 1954, states:
"§ 351. Transfer corporation controlled by transferor
"Section 351 corresponds in general to section 112(b)(5) of the 1939 Code.

No change in present law is intended by your committee as respects the basic purpose of this section. * * * Certain material changes however, have been made in the application of the principle of section 112(b)(5). Of these, the most important is the elimination in section 351 of the so-called 'proportionate interest' test. * * *" U.S. Congressional Code and Administrative News 1954, Vol. 3, p. 4254.
The "proportionate test" is not involved here.

which was harvested later in the tax year. They dissolved their individual business and made it into a corporation. Appellants attempted to claim that this expense which was incurred was deductible from their individual income tax returns.

We hold that the Central Cuba Sugar Company case, (supra) and its rationale, controls our controversy, and thus the reallocation of the Commissioner was proper.

(2) *Section 351 of the Internal Revenue Code of 1954.*

█ The appellants contend that section 482, Internal Revenue Code of 1954 [26 U.S.C.A. § 482], is in conflict with section 351, Internal Revenue Code of 1954 [26 U.S.C.A. § 351], and that section 482 [26 U.S.C.A. § 482] should not be applied when such a conflict is present.

The Third Circuit has held squarely to the contrary. In National Securities Corp. v. C.I.R., (3 Cir. 1943) 137 F.2d 600, the Court stated:

"We accordingly conclude that the application of Section 45 may not be denied because it appears to run afoul of the literal provisions of Section 112(b)(5) and 113(a)(8) if the Commissioner's action in allocating under the provisions of Section 45 the loss involved in this case was a proper exercise of the discretion conferred upon him by the section." p. 602.[8]

Thus, section 482, Internal Revenue Code of 1954 [26 U.S.C.A. § 482] will control when it conflicts with section 351, Internal Revenue Code of 1954 [26 U.S.C.A. § 351] as long as the discretion of the Commissioner in reallocating is not abused.

We have previously determined that Central Cuba Sugar Company (supra) is decisive of our problem. There was no abuse of discretion by the Commissioner.

(3) *Other Contentions by Appellants.*

Although appellants state, "The sole question at issue here is whether in the circumstances of this case the Commissioner was authorized by Section 45 not only to artificially shift income and expense to place the appellants in the worst possible tax position, but also to prevent the normal operation of Section 112(b)(5)," they make further contentions.

We have considered these contentions but find them without merit.

In view of our disposition of the case, we have not discussed the government's contention that appellants did not sustain their burden of proof, nor have we discussed the appellants' reply thereto.

The decision of the District Court is affirmed.

8. See also: Aiken Drive-In Theatre Corp. v. United States, (4 Cir. 1960) 281 F.2d

7, which approved the National Securities decision.