HENRY McK. HASEROT AND BONNIE C. HASEROT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93774. Filed January 27, 1964.

*Warren E. Hacker*, for the petitioners.
*Eugene S. Linett*, for the respondent.

564

## OPINION

This case involves one of those unusual situations where a transaction comes within the literal language of two sections of the Code [2]— 351 and 304. For purposes of section 351 (a), (b),[3] there was a transfer of property (Northport and Gypsum stock) in exchange for stock in a corporation (Company) that was controlled (owned at least 80 percent of the stock) immediately thereafter by the transferor (peti-

---

[2] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

[3] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) RECEIPT OF PROPERTY.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—

(A) the amount of money received, plus

(B) the fair market value of such other property received; and

(2) no loss to such recipient shall be recognized.

tioner). For purposes of section 304(a)(1),[4] one person (petitioner) was in control (direct or constructive ownership of at least 50 percent of the stock) of three corporations (Northport, Gypsum, and Company) and in return for property (money) one of the corporations (Company) acquired stock in the other corporations (Northport and Gypsum) from the person in control (petitioner).

Respondent now concedes that the 2,432 shares of Company stock issued to petitioner did not constitute taxable income. Respondent also concedes that if section 351 is applicable, the gain should be taxed at capital gains rates.

Both parties present a multiplicity of arguments as to which section controls. If section 351 controls, the gain is to be taxed as a capital gain. If section 304 controls, then the gain is to be taxed as a capital gain or the $64,850 cash payment is to be taxed as a dividend, depending upon the relevant parts of section 302.[5]

---

[4] SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.

(a) TREATMENT OF CERTAIN STOCK PURCHASES.—

(1) ACQUISITION BY RELATED CORPORATION (OTHER THAN SUBSIDIARY).—For purposes of sections 302 and 303, if—

(A) one or more persons are in control of each of two corporations, and

(B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then (unless paragraph (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

(2) ACQUISITION BY SUBSIDIARY.—For purposes of sections 302 and 303, if—

(A) in return for property, one corporation acquires from a shareholder of another corporation stock in such other corporation, and

(B) the issuing corporation controls the acquiring corporation, then such property shall be treated as a distribution in redemption of the stock of the issuing corporation.

[5] SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) REDEMPTIONS TREATED AS EXCHANGES.—

(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTION OF STOCK.—

\* \* \* \* \* \* \*

(3) TERMINATION OF SHAREHOLDER'S INTEREST.—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

(4) Stock issued by railroad corporations in certain reorganizations. \* \* \*

(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. \* \* \*

\* \* \* \* \* \* \*

(d) REDEMPTIONS TREATED AS DISTRIBUTIONS OF PROPERTY.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

We agree with petitioners' contention that the effect of sections 301(a)[6] and 302(d) on the facts of this case, by eliminating the possibility of dividend treatment, is to cause the payment by Company to be treated as a payment in exchange for the Northport and Gypsum stock, giving rise to a capital gain.

We have no reason to believe that Congress had any intent with regard to the fact pattern of this case. However, the statements in sections 301(a) and 302(d), "except as otherwise provided in this chapter [or subchapter]" of the Code, indicate that Congress made the policy decision that dividend treatment will result from the application of section 302 only if no other provision in the relevant parts of the Code requires other treatment.[7] Section 351 has no such limitation. That section is, by its terms, applicable.[8] That section provides for tax treatment of the payment in question in a manner other than and different from the distribution treatment provided for by sections 302(d) and 301. Consequently, the very words of the latter sections preclude dividend treatment in this case.

We recognize that this interpretation of the Code implies that brother-sister corporation redemptions may be so arranged that they continue to be subject to special scrutiny and possible dividend treatment only if the controlling party has less than 80-percent control—that greater control (with concomitant greater power for mischief) may confer the benefits of capital gains treatment. Congress might have provided that sections 301, 302, and 304 controlled or at least had coordinate status with other provisions of subchapter C. It might have provided for dividend or ordinary income treatment in the event of section 351 "boot." However, Congress chose to subordinate the dividend path of sections 302(d) and 301(a) to other provisions of the subchapter and, unlike the "boot" provisions of sections 356(a)(2), Congress chose to treat section 351(b) "boot" as a payment in exchange.[9]

---

[6] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

[7] We note that the House version of sections 301(a) and 302(b) (which became 302(d) in the Code) contained no provisions subordinating their applicability in the event of conflict with other provisions of the Code.

[8] Petitioners suggest that section 351 need not apply if only a *de minimis* number of shares are issued or if the transaction is a sham. We need not consider whether those limitations should be accepted and, if so, whether the boundaries lie between "real" section 351 transactions and those that may be disregarded. Here, the shares issued formed a substantial part of the entire consideration and the stockholdings were changed in fact in accordance with the form of the transaction. Cf. *Richard M. Mills,* 39 T.C. 393 (1962), where this Court held that the word "solely" in the statute precluded application of the *de minimis* doctrine.

[9] Compare sec. 368(a)(1)(B) where any "boot" causes recognition of all gain, not merely gain up to the amount of the boot. Under secs. 356 and 351, gain in excess of the boot is not recognized.

Respondent relies upon *Jack L. Easson*, 33 T.C. 963 (1960), revd. 294 F. 2d 653 (C.A. 9, 1961), for the proposition "that what is now section 351 will not be construed literally if a literal application will be contrary to the purpose of the statute by producing absurd results or frustrating the tax laws as a whole." In *Easson*, we were concerned that a literal application of section 112(k) of the 1939 Code (the predecessor of subsections (a) and (b) of section 357) would result in avoidance of a tax, even though that section and 112(b)(5) of the 1939 Code, the predecessor of section 351, were enacted merely to postpone that tax. Here, both sides agree that a tax is presently due. The only question is whether the tax is to be at capital gains rates and only upon the gain, or at ordinary rates, upon the total cash payment; and with a corresponding upward adjustment in basis of other stock, in effect, deferring a reduction of tax. Even without giving consideration to the decision of the Court of Appeals in *Easson*, we cannot say that in the case before us the frustration of congressional purpose is so apparent that we must ignore the statutory language.

Respondent cites *National Securities Corp.* v. *Commissioner*, 137 F. 2d 600 (C.A. 3, 1943), affirming 46 B.T.A. 562 (1942), and *Rooney* v. *United States*, 305 F. 2d 681 (C.A. 9, 1962), as examples of section 351 giving way when in conflict with other sections. In *National Securities* the court held that the predecessor of section 482 [10] was intended to supersede conflicting provisions of the revenue acts. *Rooney*, too, involved a conflict between sections 351 and 482. The Court of Appeals there followed *National Securities* on that point. 305 F. 2d at 686. By contrast, the conflicting provisions we are here concerned with, specifically note that they are to give way. Consequently, here, section 351 takes precedence.

Respondent's cause is not advanced by his reliance upon the explanation of section 304 in *Radnitz* v. *United States*, 294 F. 2d 577, 578 (C.A. 2, 1961), to wit: "The clear intent of this provision is to make all sales of stock to related corporations subject to the rules of section 302." In *Radnitz* the court held that a transaction was not exempted from section 304 merely because the taxpayer received from the corporation no more than the fair market value of the stock he surrendered. Such a fair exchange is no more exempt from section 304 than a direct redemption at fair market value would be from

---

[10] SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

section 302. *Radnitz* was followed on this point in *United States* v. *Collins*, 300 F. 2d 821, 824 (C. A. 1, 1962). Neither *Radnitz* nor *Collins* involved a conflict between different sections of the Code. In both cases, the appellate courts determined to apply the statute as it was written, declining the taxpayers' invitations to imply exceptions to its terms. What we do here is perfectly consistent with *Radnitz* and *Collins*.

We do not lightly assume that Congress has legislated eccentrically. *J. C. Penney Co.* v. *Commissioner*, 312 F. 2d 65, 68 (C.A. 2, 1962), affirming 37 T.C. 1013 (1962). Nevertheless, the language of the statute compels, in our view, the result here reached.

Since there is no dispute as to the amount of the gain and since that amount will in either event be taxed as a long-term capital gain, it is not necessary for us to determine in this proceeding whether that result is arrived at via section 351 or via sections 304 and 302(a).

*Decision will be entered under Rule 50.*